Frank S. McCullough, J.
This is a proceeding under article 78 of the Civil Practice Act in which the petitioner, an unsuccessful bidder, seeks an order (1) directing the respondent members of the Board of Estimate of the City of Mount Vernon to annul and rescind a resolution accepting the bid of the respondent, Atlas Equipment Sales, Division of Atlas Engine Rebuilders, Inc., and (2) directing the board to accept the bid of the petitioner, Grlen Truck Sales & Service, Inc.
The respondents moved to dismiss the petition as being insufficient as a matter of law. The motion came on to be heard before Mr. Justice Hopkins, who in a well-reasoned and citation-documented opinion (31 Misc 2d 1027), sustained the sufficiency of the petition as a matter of law and referred the trial of the issues to this court sitting at Special Term, Part II, in accordance with section 1295 of the Civil Practice Act.
For the purpose of easy reference the parties to this proceeding will be designated by the same appellations used in Mr. Justice Hopkins’ opinion; the Board of Estimate will be called “Board”, Atlas Equipment Sales, etc., will be called “Atlas”, and the petitioner will be designated as “Grlen Truck. ’ ’
It is admitted by the pleadings that the Board was empowered to advertise for public bids in connection with purchases by the City of Mount Vernon and to accept the bid which would be most advantageous to the city.
The Board advertised for sealed bids for 5 heavy-duty 36,000 lbs. gross vehicle weight dump trucks, to be submitted according to certain specifications and conditions on mimeographed forms supplied by the Board. The weight specifications read as follows:
“ a. The net weight of chassis and enclosed cab without load, body and hoist shall not be less than 9,600 lbs.
“ b. The gross vehicle rating including the weight of the chassis cab, hoist body and load shall not be less than 36,000 lbs.”
The instruction to bidders provided that ‘ ‘ Bidders are to submit bona-fide detailed specifications, description and illustration of unit bid upon. By that we mean literature that is printed *863 by the manufacturer. Any added clause or description typed or printed will not be accepted. Any alternates submitted with this specification, if not requested by the Commissioner of Public Works, will automatically disqualify the bidder.”
Bids were submitted by Atlas and Glen Truck and no other bidder. The bids were opened on June 20, 1961 at a meeting of the Board in the presence of members of the Board, the City Engineer, the Commissioner of Public Works, representatives of Glen Truck and Atlas, the City Clerk, an Assistant Corporation Counsel, a representative of the press and others. The testimony disclosed that the Glen Truck bid was opened first by the City Clerk, who handed it to the Corporation Counsel who examined the bid as to legal compliance and returned it to the City Clerk for the reading of the bid. The bid was submitted with International literature attached. The submitted price was $57,243.85. The bid of Atlas was then opened. The City Clerk opened the bid and again handed it to the Corporation Counsel who examined the bid for legal compliance. The City Engineer testified that the Corporation Counsel “ proceeded in detail to look over the bid and also set aside on his left on the table pieces of illustrative literature.” He further testified that the “ Commissioner of Public Works then asked me [the City Engineer] to hand him these pieces of illustrative literature whereupon he showed me the sheet indicating the gross vehicle weight of 36,000 pounds then handing this matter to the Council President Mr. Ragette ’ ’. The City Clerk testified that he opened the Atlas bid and handed it to the Corporation Counsel and that the bid envelope contained more than one piece of literature.
Paragraph 14 of the Glen Truck petition alleges that following the opening of the sealed bids, the Commissioner of Public Works, who was present at the bid opening furnished the Board from his person the following papers pertaining to Diamond T Trucks (Atlas bid), none of which were part of the alleged bid of Atlas, (a) Data Book Change Notice May 26, 1961, (b) Municipalities operating Diamond T Trucks.
The petition further alleges that none of the said papers were a part of the sealed bid and were wrongfully and improperly accepted by the board.
The court in view of the seriousness of the charge gave considerable leeway at the trial in relation to the introduction by the petitioner of oral testimony as to conversations with the Comptroller although the evidence might quite properly have been excluded.'
*864 This is an important element in the proceeding* for as Judge HoPKins pointed out (p. 1030): “ When essential information is missing from a bid when it is opened, it may not be supplied then or thereafter by a private understanding between the bidder and the board, nor otherwise (cf. Belousofsky v. Board of Educ., 54 N. J. Super. 219).
There is no credible evidence in the record in the opinion of the court which could justify a finding that documents were received or considered which were not contained in the original bid envelope. The court rejects the plaintiff’s contention in view of the sworn testimony given on the trial of this action. Unfortunately the pages of the bids were not individually stamped, a procedure the court would recommend for future bids.
The bid of Atlas was $53,265 and was thus the lower bid.
After the bid opening, the petitioner protested the Atlas bid, claiming* that under the law and the specifications the Atlas bid could not be properly received or considered by the Board. On August 15, 1961, the bid of Atlas was accepted.
It is the petitioner’s contention that even assuming* the disputed documents were in the bid envelope, they are the only papers and documents which can be considered in the bid award, and that in the awarding of the bid other papers were considered by the Board. In short, that these papers and documents themselves did not show that this bidder had met the specifications.
The Commissioner of Public Works retained an engineer who had 20 years’ experience with heavy duty dump trucks and had designed and constructed them. He testified that he had examined the specification sheet of the International (Glen Truck) and the specification sheet and change notice of the Diamond T (Atlas). He stated that he made arrangement to get extra material because he could not express an opinion based on the material that was submitted with the bid. On July 11, 1961 he rendered an opinion in which he stated 1 ‘ that both bids indicate compliance as to major components and the various accessories by both manufacturers ”. In arriving at this conclusion he stated he examined ‘ ‘ blue prints ’ ’, which he requested of the engineering departments of the various companies; ‘ ‘ Chassis specification sheets ”; “data book material”; “Diamond T Data Book Change Notice No. 112 ” effective May 26, 1961 and ‘ ‘ Diam'ond T data book sheets listing optional equipment available on Model 5020.” On August 3 he issued a line by line report which showed three minor items of noncompliance with petitioner’s bid and none by Atlas. On August 4, 1961 the Board met with the bidders, their attorneys, representatives, *865 engineers, the Commissioner of Public Works, and an Assistant Corporation Counsel. Petitioner’s counsel prior to a discussion noted his objection to the expert’s report on the ground it was based on documents and book material which were not part of the bid documents of June 20, 1961 and therefore contrary to its “ Instruction to Bidders ”. Each item was checked by the Mayor reading each item and asking “is there any objection on either side ”. There were two items which concededly did not comply in the den Truck bid. On August 15, 1961, the Board adopted a resolution which read in part as follows: “ Resolved, that the Bid of Atlas Equipment Sales Division of Atlas Engine Rebuilders, Inc. # * * be and the same is hereby accepted ”. On August 16, 1961 a contract was entered into between the Board and Atlas Equipment Sales Division of Atlas Engine Rebuilders, Inc.
The court holds in relation to the petitioner’s objection as to the consideration of documents not a part of the bid that the Board is not estopped from attempting to get full facts, and information before consideration of the bids. It is only where there is an abdication of judgment based on factors not included in the bid that such practice is objectionable. There is no evidence to show that the decision was not in fact based on the bids alone and the consideration of the expert’s report was for the purpose of an intelligent understanding. The substantial difference in price is certainly an item that can be said 1 ‘ would adequately serve the best interests of the City.”
The final point raised by the petitioner pertains to the corporate existence, or alleged lack of it, of the entity designated as the successful bidder herein.
The petition alleged that Atlas was not engaged in the business of truck sales and service for at least 12 months prior to the opening of the bids, as required by the general specifications. The purpose of the requirement is to assure the award to an experienced bidder.
The petitioner, at the opening of the trial, introduced into evidence a communication from the Secretary of State, revealing that there was no corporation named 11 Atlas Equipment Sales, Division of Atlas Engine Rebuilders, Inc.”, but that there was a corporation named “ Atlas Engine Rebuilders, Inc.”, formed in 1955. Counsel for petitioner contended that as a result respondent Atlas “ was not in existence.”
The apparent ineffectiveness of this approach is emphasized by the language of the court in Mail & Express Co. v. Parker Axles (204 App. Div. 327, 328-329): “ I do not think there is any doubt but that the use of a name other than the granted or *866 legal corporate title of one party in an agreement with another party is wholly immaterial to the validity of a contract between the corporation using the symbol and the other party in any suit upon that contract.
“ Of course it must be alleged and demonstrated that the corporation sued or suing was really intended by the parties to be the corporate entity described in the contract by the colloquial title. A contract entered into by a corporation under an assumed name may be enforced by either of the parties. If the entity of the corporation can be ascertained from the instrument itself, the misnomer is held unimportant} but if not, evidence may by introduced aliunde to establish what particular corporate entity was intended.
# # #
“It seems to be well recognised that a corporation may be known by several names in the transaction of its business, and it may enforce and be bound by contracts entered into m an adopted name other than the regular name under which it was incorporated.” (Italics supplied.)
Also quite logical is the discussion of misnomer with respect to corporations appearing in American Jurisprudence (vol. 13, Corporations, § 133): “ Between the names of individuals and corporations there seems to be this difference: The alteration of a letter or transposition of a word usually makes an entirely different name of the person, while the name of a corporation frequently consists of several descriptive words and the transposition of them or an interpolation, omission, or alteration of some of them may make no essential difference in their sense. It is the general rule that in case of the misnomer of a corporation in a grant, obligation, written contract, notice, etc., if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the body corporate is well named, although there is a variation of words and syllables.”
Finally, the court is of the opinion that a simple scanning of the name employed in the bid leads to a common-sense determination that the wording employed merely refers to a division of a corporation known as Atlas Engine Rebuilders, Inc.
The court is satisfied that the award was made to a bidder that was experienced in the field. Accordingly, the petition is dismissed.