Walter J. Mahoney, J.
This is an article 78 proceeding brought by the petitioners asking a review by this court of *1060 the acts of the respondents. Included in their prayer for relief, the petitioners ask the entry of a final order determining that Addendum Exhibit B and Item 0320.01 of the specifications for the Erie County Health Center Facility for Children School 84, Buffalo, New York and the resolution of the Erie County Legislature upon which they are allegedly based, are unlawful and unconstitutional. Ffirther, they request an order of this court directing the respondent, H. Dale Bossert, Erie County Commissioner of Public Works and its designated architects and engineers, namely, Turley, Stievater, Walter & Mauri & Associates, to cancel and withdraw the aforesaid Addendum Exhibit B and Item 0320.01 and to advertise bids for said project without the inclusion therein of the previously mentioned Addendum and Item 0320.01. Further, the petitioners request an order enjoining the respondents from attempting to enforce or implement the resolution of the Erie County Legislature and grant an injunction against the respondents for the relief sought herein.
The Addendum and Item referred to above require that all structural steel reinforcing bars, steel piling or other construction steel items to be incorporated in the project shall be manufactured in the United States. This Addendum and Item in the specifications is apparently based on a resolution of the County Legislature popularly known as a “ Buy American” resolution.
The resolution of the Erie County Legislature adopted April 16, 1968 upon which specifications are purportedly based, reads as follows: “resolved, That the Contract Documents, for each Capital Improvement Project of the County of Erie, hereafter awarded shall provide that, if any structural steel, reinforcing bars, steel piling or other construction steel items are to be incorporated in the Project, only steel made in Mills located in the United States, shall be supplied for such purposes in the performance of the Contract or any Sub-contracts thereunder. In the event the Commissioner of Public Works determines that any aforementioned steel products are not available from Mills located in the United States, due to labor conditions, he may except such steel products from this requirement.”
The petitioner, American Institute For Imported Steel, Inc., is a membership corporation existing under the laws of the State of New York, and consists of corporations and firms engaged in the business of importing steel products suitable for use in the construction of public projects. The petitioner, Kurt Orban Company Inc., is likewise a New York corporation. *1061 The petitioner, Charles F. Winkle, is a resident and taxpayer of the County of Erie and District Sales Manager of the petitioner, Kurt Orban Company, Inc. The respondent, H. Dale Bossert, as Commissioner of Public Works for the County of Erie, on or about October 30,1968 invited bids for a new facility for children to replace School 84 adjacent to the E. J. Meyer Memorial Hospital, said facility to be known as the Erie County Health Center Facility for Children School 84, Buffalo, New York.
The advertisement of the aforesaid public project invited sealed bids based upon specifications promulgated by respondent, H. Dale Bossert.
'Subsequently, the architects and engineers retained by the respondents, with the approval of respondents issued an addendum to the specifications which reads as follows: “ 1. Bidders attention is called to the following resolution which was adopted by the Erie County Legislature on April 16, 1968.” (Full text of resolution quoted above.)
Petitioners also claim that the afore-mentioned specifications require structural steel and other items which can be filled by the use of steel imported into the United States.
The petitioners allege several reasons why the Addendum and “ Buy American” resolution of the Erie County Legislature are invalid as set forth in the petition, viz:
“ a. iSuch a Buy American requirement is in violation of a New York State general law requiring competitive bidding and awarding of ,a contract to the lowest bidder.
“ b. The County of Erie has no power to regulate foreign commerce. This is reserved to the Federal Government by the United States Constitution, and the County’s action is in interference with this federal power.
‘1 c. The Buy American requirement violates Article III of the General Agreement on Tariffs and Trades (GATT), an international compact to which the United States is a party.
‘1 d. The Buy American requirement is beyond the powers of Erie County.
“ e. The resolution and Addendum deny petitioners — New York residents dealing with imported steel —equal protection of the laws by arbitrarily preferring other residents who purchase and use domestic steel in violation of the New York and United States Constitutions.
‘ ‘ f. The resolution and Addendum deprive the petitioners of their property and rights to sell their steel without due process of law in violation of the New York and United States Constitutions.
*1062 “ g. The Addendum and resolution are vague and indefinite and incapable of administering.
h. The conduct of respondents seeking to implement the Buy American resolution constitutes waste and injury to the taxpayers of Erie 'County.”
It is significant that while the petitioners request the court to consider all of the grounds above noted they place their emphasis actually on Wo main grounds for the relief sought, namely:
(a) The actions of the respondents are in violation of the requirement of the New York Legislature that county contracts must be by competitive bidding in accordance with section 103 of the General Municipal Law which in effect provides that contracts of the nature herein must be awarded to the ‘ ‘ lowest responsible bidder ’ ’;
(b) The action of the respondents constitutes an undue interference with the powers of the Federal Government to regulate commerce, in violation of the commerce and supremacy clauses of the United States Constitution, namely:
Clause 3 of section 8 of article I of the United States Constitution provides: “ The Congress shall have power.— * * *
3. To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.”
Paragraph 2 of section 10 of article I of the United States Constitution provides as follows: “2. No ¡State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws; and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress.”
Article VI (par. 2) of the United ¡States Constitution provides as follows: “ This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land.; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. ’ ’
While the petitioners advance other contentions, they do not seem to place much emphasis on them nor does the court find them persuasive. One of these contentions is that the United States is a party to the General Agreement on Tariffs and Trades, popularly known as GATT, a multilateral international *1063 compact, which provides that the products of signatory nations imported into the territory of a contracting party shall be accorded treatment no less favorable than products of domestic origin. The pertinent provisions of GATT read as follows:
“ 2. The products of the territory of any contracting party imported into the territory of any other contracting party shall be accorded treatment no less favorable than that accorded to like products of national origin in respect of all laws, regulations and requirements affecting their internal sale, offering for sale, purchase, transportation, distribution or use. (61 U. S. Stat. A18 [1947].)
‘ ‘ 5. The provisions of this Article shall not apply to the procurement by governmental agencies of products purchased for governmental purposes and not for resale or use in the production of goods for sale ”. (61 U. S. Stat. A19.)
It would appear from the foregoing provisions of GATT that they do not in and of themselves supersede local legislation. In any event, petitioners have not met their burden on this contention since it is this court’s opinion that the GATT provisions are not here applicable.
We can now proceed to a discussion of the primary contentions pressed by the petitioners in seeking the relief as outlined in its petition, namely:
(1) That the respondents’ action is in violation of section 103 of the General Municipal Law of the State of New York; and
(2) That the action of the respondents is an unwarranted interference with the powers of the Federal Government to regulate commerce.
As to point one, the petitioners’ memorandum quotes, as authority for the relief sought, McQuillin, Municipal Corporations (vol. 10 [3d ed.], § 29.49, p. 364) which states: “ As already stated, one of the common exceptions to the rule requiring competitive bidding exists where the subject matter of the contract is held under monopoly control. On the other hand, a different proposition presents itself where there are several manufacturers who produce a certain article or where the material can be secured from two or more different localities. In such a case it is held in nearly all the decisions that bidding cannot be restricted to bids on an unpatented article manufactured by a particular firm, or material obtained from a particular locality. ’ ’
The wording of the above is so ambiguous and unclear that, in this court’s opinion, it has no persuasiveness.
It would appear that there are no New York cases, particularly from an appellate court, dealing with the question we now consider. Therefore, we must look to other sources from which *1064 we may draw by analogy on the principles applicable to the matter now before the court.
Petitioner in its memorandum cites Texas Highway Comm. v. Texas Assn. of Steel Importers (372 S. W. 2d 525 [Sup. Ct., Texas, 1963]) as a leading case in this field and one which they contend is directly in point. The court’s decision was based upon an order of the Texas Highway Commission dated March 28, 1960, which reads as follows (p. 526): “All construction contracts, beginning with the January 1961 letting, shall include a provision that materials furnished under such contracts shall be manufactured in the United .States, its territories and possessions. It is further understood and directed that where finished construction material is manufactured in a United States or territories mill it will be considered as a domestic product and will be acceptable under the terms of this Order provided all other requirements of the specifications are met.”
In said case, the Texas court thoroughly reviewed the purposes of competitive bidding statutes and held, that, the order of the Texas Highway Commission was void, since it was in conflict with a Texas statute (Texas Stat., art. 6674h) which provided in part as follows: ‘ ‘ All contracts proposed to be made by the State Highway Department for the improvement of any highway constituting .a part of the State Highway System or for materials to be used in the construction or maintenance thereof shall be submitted to competitive bids.” (p. 526).
It is significant to this court, that the aforesaid Texas decision refers to an order of an administrative agency and not to a legislative enactment such as we are considering in the present proceeding.
The petitioner also points out as support for its contention, the Court of Appeals case entitled Gerzof v. Sweeney (16 N Y 2d 206). In this case, the court found that the specifications under consideration were drawn so as to arbitrarily favor one manufacturer and to bar others from bidding on a municipal contract, which was deemed violative of section 103 of the General Municipal Law. In the opinion of this court, that opinion is not applicable to the problem confronting us, since it refers to specifications which arbitrarily favor one manufacturer. It is well-established law on this subject, that it was only arbitrary discrimination in the drawing of specifications that is offensive and not discrimination per se.
Therefore, on this point we must conclude that the ‘1 Buy American ” resolution and the contract specifications that *1065 followed are not violative of section 103 of the General Municipal Law.
Now let us proceed to the rationale of point two of the petitioners to the effect that the Addendum and resolution are invalid as encroachments, since they attempt to regulate foreign commerce. We are immediately confronted in this matter with clause 3 of section 8 of article I of the United ¡States Constitution, conferring upon the Federal Government the power “to regulate Commerce with foreign Nations ’ ’. The petitioner quotes the case of Guy v. Baltimore (100 U. S. 434, 443) in which the Supreme Court of the United States stated that it “ reaches the interior of every State of the Union, so far as it may be necessary to protect the products of other States and countries from discrimination by reason of their foreign origin ”. Presumably, our answer to the above could be that the United States Government in itself has a rule similar to the one passed by the Erie County Board of Legislators. Subdivision (a) of section 10b of title 41 of the United States Code requires use of American-manufactured or produced articles in construction contracts. However, we must go further and state that we must necessarily differentiate between the proprietary action of the State and its acts which purport to regulate private transactions where, if (the governmental entity) attempts to regulate private transactions arbitrarily; this well may be a constitutional problem. However, when the State acts in its proprietary capacity there can be none.
A significant decision of the Court of Appeals of this State was People v. Crane (214 N. Y. 154) in which the court was considering a conviction for violation of then section 14 of the Labor Law which gave preference to citizens of the United States in the construction of public works by a State or municipality. In that case the Appellate Division held that said statute violated the State and Federal Constitutions, and, was in effect discriminatory in that it “ excluded aliens of their liberty without due process of law”. In the afore-mentioned opinion, Judge Cabdozo uses some language that by analogy should be very pertinent to our present problem. At page 161, he said: “ To disqualify aliens is discrimination indeed, but not arbitrary discrimination, for the principle of exclusion is the restriction of the resources of the state to the advancement and profit of the members of the state. Ungenerous and unwise. such discrimination may be. It is not for that reason unlawful. ’ ’ Continuing, he states (p. 162): “The principle that justifies these discriminations is that the common property of the state *1066 belongs to the people of the state, and hence that, in any distribution of that property, the citizen may be preferred ”.
Judge Oabdozo continues (p. 172): “This statute must be obeyed unless it is in conflict with some command of the constitution, either of the state or of the nation. It is not enough that it may seem to us to be impolitic or even oppressive. It is not enough that in its making, great and historic traditions of generosity have been ignored. We do not assume to pass judgment upon the wisdom of the legislature. Our duty is done when we ascertain that it has kept within its power.”
The Crane case was affirmed by the United States Supreme Court in 239 U. S, 195.
Paraphrasing some of the language of Judge Cabdozo to our present proceeding, it is this court’s belief that it cannot assume to pass judgment upon the wisdom of the Erie County Legislature’s enactment or whether or not its allegedly offensive resolution was extremely parochial.
Insofar as this court can ascertain, the afore-mentioned Crane decision has never been reversed, and, whether or not this court agrees with it is of no moment. Further, this court being one of original jurisdiction, it cannot, or, at least in its opinion, should not attempt to disregard a decision affirmed by the Supreme Court of the United States, which by analogy should control our thinking in the present proceeding.
Judge Cakdozo also stated (p. 173): “ Mischief and hardship, it is said, will follow the enforcement of this law. If that is so, we cannot help it. To correct those evils, if they shall develop, will be the province of legislation.”
Again, attempting to reason by analogy, it is the opinion of this court, that, if there is evil or discrimination that is not arbitrary in the matter before us, “we cannot help it ”. It is a matter to be decided by the legislative branch of government.
Too often in recent years it seems that many courts are taking upon themselves duties and prerogatives which our founding fathers reserved to the legislative branch of government.
It is axiomatic to state that the duty of the courts is to judge and not to legislate. Under our concept of the Constitution, the court should interpret the laws and not make them. This of course is not to say that the courts should abandon their prerogatives and fail to do their duty in striking down any legislation no matter how popular, if it is repugnant to the Constitutions of the' State or Nation, which we hope guarantee to us a government of laws and not of men.
Lest there is any question that People v. Creme (214 N. Y. 154, affd. 239 U. S. 195) is still the controlling case law of this *1067 State, it should be pointed out that it was cited with approval by Chief Judge Fuld in McMillen v. Browne (14 N Y 2d 326).
Referring again to People v. Crane, the following language used by Judge Seabury in a concurring opinion should be of interest relative to the present proceeding. Therein he stated (pp. 179,182): “ Questions of great difficulty may present themselves as to how far the state may impose restraints or limitations upon the exercise of individual rights over private property but no such questions are presented as to public property. Public property is in its very nature subject to social control. The authority of the state over all public works and public undertakings is supreme and this is so whether the public works are undertaken directly by the state or by municipality or any other agency of the state. Just as the individual may, generally speaking, do what he will with his own, so the state, may exercise a like control over public property. In the same way that prwate property is subject to individual control, so public property is subject to governmental control * # * The public property or commonwealth should of course be used to promote the general welfare, but the restraints or checks to which the government is by constitutional provisions subjected, when it acts in reference to private property, have no application where it acts in relation to public property.”
The court is not unaware of People ex rel. Treat v. Coler (166 N. Y. 144), cited by petitioners. However, in this court’s opinion, application of the principles subsequently enunciated by the United States Supreme Court in Atkin v. Kansas (191 U. S. 207) and our Court of Appeals in People v. Crane (supra) to the facts of the case at bar would appear more pertinent and controlling.
In the absence of controlling opinions by appellate courts of this State, we may logically turn to other criteria in order to help us determine the public policy, if any, of the State of New York relative to imported products such as steel to be used in public buildings. Along this line we should like to point out that the State Architectural ¡Standards Specifications of January 2, I960, section 155 of article 35 provide: “ Preference shall be given to articles or materials manufactured or produced within the United States. Only domestic articles or materials shall be used when they are available.”
It is also significant that section 174 of the State Finance Law provides that State contracts shall be let to the “lowest responsible bidder ”. Despite the above provision, it is common knowledge that domestic material is given preference by the State of New York relative to materials used in the con *1068 struction of its highways and in the contracts let by its G-eneral Services Department.
Referring to People v. Crane (supra) and Heim v. McCall (214 N. Y. 629, affd. 239 U. S. 176): essentially, in these cases, the statute was challenged on the same grounds which are urged by the petitioners in the present case, namely, conflict with the Fourteenth Amendment and with the C'ommerce Clause. Since it is our belief that the Crane case is still the law of the State, it might be well to once more point out some of its verbiage which is pertinent to the present contention we now consider. The court said (p. 169): “ It is a denial of the equal protection of the laws when the government, in its capacity as a lawmaker, regulating, not its own property, but private business, bars the alien from the right to trade and labor. It is not a denial of the equal protection of the laws when the government, in its capacity as proprietor, issuing a mandate to its own agents * * * bars the alien from the right to share in the property which it holds for its own citizens. ’T Again, we must point out that the above decision was unanimously affirmed in the Supreme Court.
This court is aware of the opinion of the Superior Court of California, 1966, entitled Bethlehem Steel Corp. v. Board of Comrs. This was a decision of a trial court and apparently is presently on appeal. Notwithstanding said decision, in the light of New York case law, affirmed by the Supreme Court of the United States, the rationale of which is more persuasive to this court, we question the validity of the reasoning in the California decision.
It may be significant to point out interesting language used by the New Jersey Supreme Court in Garden State Dairies v. Sills (46 N. J. 349 [1966]). "While it is true that this case had some elements that were different from those which confront us, the language of the highest court of that State is illuminating when it wrote as follows (p. 356) : “ A brief word should be said about a miscellany of state statutes that have been pointed to as examples of state parochialism. Thus, a state or local government may decree by statute or regulation that it will buy only products produced by local producers or that it will employ only local residents or citizens on its public works. This kind of preferential employment has been consistently sustained in the Supreme Court and doubtless the same result would be reached in a buy at home case. The motion underlying these cases is that the state is the sole proprietor of its own public works ’ ’.
*1069 For the reasons hereinbefore set forth, it is the opinion of this court that petitioners have failed to sustain the burden of proving the allegations set forth in their petition and that the relief sought therein must therefore be denied and the said petition dismissed.