## STATE OF NEVADA, NEVADA STATE PURCHASING DIVISION, APPELLANT, v. GEORGE'S EQUIPMENT COMPANY, INC., RESPONDENT.

No. 18911

December 6, 1989        783 P.2d 949

*Brian McKay,* Attorney General, and *Debra Winne Jeppson,* Deputy Attorney General, Carson City, for Appellant.

*Woodburn, Wedge & Jeppson* and *W. Chris Wicker,* Reno, for Respondent.

---

## OPINION

By the Court, ROSE, J:

Appellant, State of Nevada, Nevada State Purchasing Division (State Purchasing), awarded a contract to supply the Nevada Division of State Parks (State Parks) with a backhoe to a bidder who did not submit the lowest bid, and determined that the lowest bidder, respondent George's Equipment Company, Inc. (George's), did not meet all specifications in the bid it submitted and had not submitted a responsible bid because of the unreliability of its product. George's challenged the bid award first at a hearing before the Director of State Purchasing and then in district court. After a hearing, the district court held that the bid specifications were improper because they favored the successful bidder and directed the State to rebid the contract. State Purchasing has appealed the district court's decision.

We conclude that the hearing held by State Purchasing is not governed by the Nevada Administrative Procedure Act, that the bid specifications were proper as drawn, and that consideration of information secured subsequent to the bids being opened was proper. We affirm the awarding of the bid by State Purchasing and reverse the district court's order directing State Purchasing to rebid the contract.

## FACTS

In August, 1987 State Parks requisitioned a backhoe from State Purchasing. State Parks' maintenance manager, Robert Howard (Howard), developed the required bid specifications from a John Deere 310C backhoe specification sheet provided to him by a John Deere dealer. He did this because his department had used a John Deere backhoe for years and was satisfied with its performance.

On September 3, 1987, State Purchasing sent out an invitation to bid on a backhoe, John Deere 310C or approved equal. In addition to the specifications, the invitation to bid stated that "the contract will be awarded to that responsible bidder whose bid conforms to the Invitation and Bid and will be most advantageous to the State, price and other factors considered." State Purchasing received five responses and the bids were opened on September 21, 1987.

George's bid was to provide a JCB 1400 B-CM-4WD-Turbo backhoe (JCB) to the State. The only exceptions to the required specifications that George's listed were the JCB not having a shift differential lock and the JCB having different tires. Gail Tenk (Tenk), State Purchasing's senior buyer, was present when the State opened the bids and heard other bidders comment upon George's lack of exceptions.

George's was the lowest bid at $28,790.22. Burkes' Tractor Company was next lowest with a bid offer of a Case 580K backhoe for $34,300.00. Weaver Equipment Company (Weaver) was third lowest with a bid offer of a John Deere 310C backhoe for $35,470.00.

Tenk subsequently contacted Howard with questions regarding George's bid specifications on the JCB. Howard informed Tenk that he lacked information on the JCB and would make inquiries. Thereafter, Howard contacted a Mr. Smith who was employed by Humboldt County at the county yard in Winnemucca. Smith stated that his equipment included a JCB backhoe, but even though it had less than one thousand hours of service, he did not use it because it was unreliable. Howard also contacted Wilson's Construction Company and was informed that they owned two

JCBs which were unreliable. In addition, Howard visited the Washoe County yard, inspected one of two JCBs there, and received maintenance printouts which detailed the problems Washoe County had experienced with the machine. Finally, Howard visited a JCB dealer and inspected an older model.

As a result of Howard's inquiries, Tenk confirmed that George's did not list all of the JCB bid specification exceptions. Tenk obtained the Washoe County JCB maintenance reports from Howard. The reports indicated the maintenance problems, down time, parts cost, and work performed by Washoe County on the JCB. Tenk then conferred with her supervisor, Alvin Craig (Craig), and discussed with him the exceptions contained in the bids. According to Tenk, her initial concern was with George's failure to meet several of the bid specifications; subsequently this was overshadowed by a concern of the equipment's reliability as evidenced by Washoe County's service records.[1] Prior to the contract's award, Tenk gave consideration to State Parks' particular needs, including their "unique situation," their intended use of the equipment, and the likelihood that it would again be some time before they received another legislative appropriation for a backhoe.[2]

Tenk asked Craig's opinion regarding whether sufficient grounds existed to award the contract to Weaver. In Craig's opinion, sufficient grounds did exist based on George's failure to meet bid specifications and JCB's questionable reliability.

On October 2, 1987, George's received notice that the State had awarded Weaver the contract for the backhoe. Bud Wade, George's branch manager, wrote Tenk on October 6, 1987, and requested a "meeting" to review Washoe County's maintenance reports and to present his own data concerning the JCB backhoe. In a letter dated October 14, 1987, Terry Sullivan (Sullivan), Director of the Department of General Services, gave George's "notice" of the time and place set for the hearing on George's appeal. Thereafter, Bud Wade wrote Sullivan in a letter dated October 20, 1987, and requested "that the award as placed, be rescinded, and placed with George's Equipment Co., Inc. . . ."

The October 21, 1987, hearing on George's appeal began with the following comments from Sullivan:

---

[1] Tenk memorialized her concerns with the two lowest bids on a bid tabulation sheet. Among her concerns with the JCB backhoe were: (1) the cost and availability of parts, (2) down time, (3) Washoe and Humboldt counties' dissatisfaction with the machines, and (4) JCB's variance with bid specifications. Tenk also noted that the Case 580K backhoe did not have a "wet sleeve" engine as required by the specifications.

[2] State Parks' backhoe at the time was twenty years old, and it had sought an appropriation for a new backhoe for five consecutive legislative sessions.

> For the record, this is an appeal of #7789 by George's Equipment Company. Just so you'll know, this is an informal hearing. The rules of evidence do not apply. Are you the attorney? You don't have an attorney here, you, of course, are welcome to have one. The way we conduct the hearing is that I'll let George's Equipment Company present their side, the State will present their [sic] side and then we can have an open discussion about it, if that's agreeable with everybody. I'd like you to, for the record, identify yourself before you speak, because if we need the record later, then it will be proper. . . .

No one was placed under oath to testify. During the hearing differences were noted between the specifications contained in the State's invitation to bid and George's bid. Apart from the locking shift differential exception, none of the exceptions discussed at the hearing were noted on George's bid, nor did George's bid explain, as required by the State's invitation to bid, how JCB's torque proportioning system was equal to the specified locking shift differential.

In a letter dated October 29, 1987, Sullivan notified George's that he was upholding the award of the contract to Weaver and stated the basis for his decision. According to Sullivan, the JCB did not meet specifications in two prime areas: (1) the absence of a locking shift differential, and (2) the JCB's turning radius was larger than the John Deere's. However, the State's invitation to bid did not list a specification for the backhoe's turning radius.

On November 3, 1987, State Purchasing ordered the John Deere backhoe from Weaver. State Parks accepted delivery on November 12, 1987, and Weaver was paid in full at that time. State Parks began using the tractor on November 20, 1987.

On November 25, 1987, George's filed a complaint for injunctive relief, a motion for temporary restraining order and preliminary injunction, and a petition for writ of mandamus. At a hearing on December 11, 1987, the district court entertained and denied the State's motion to dismiss George's petition for a writ of mandamus, complaint for injunctive relief and to dissolve the temporary restraining order issued November 25, 1987. The district court found that the parties' actions were not governed by the Nevada Administrative Procedure Act and that a writ of mandamus was a proper remedy in seeking review of the State's actions. The hearing was continued and held on December 22, 1987.

In an order filed January 27, 1988, the district court held that the contract entered into between the State and Weaver was void and unenforceable because the bid specifications had been

improperly tailored to fit the John Deere backhoe. The district court enjoined the State from accepting Weaver's bid, and further enjoined the State from entering into any contract for the purchase and delivery of the backhoe with Weaver. The district court also enjoined State Parks from using the backhoe. In addition, the district court granted George's petition for a writ of mandamus, and ordered that the Director of State Purchasing submit the backhoe contract for re-bidding.

## LEGAL DISCUSSION

I. *Whether the hearing held pursuant to NRS 333.370 was governed by the Nevada Administrative Procedure Act.*

The first question presented by this appeal is whether the "hearing" Sullivan conducted as head of the State Purchasing Department pursuant to NRS 333.370 was a contested case as contemplated in the Nevada Administrative Procedure Act. NRS 233B.032 of that Act defines a contested case: " 'Contested case' means a proceeding, including but not restricted to rate making and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, or in which an administrative penalty may be imposed." If a hearing held by an administrative body is considered a contested case and the agency is not exempt from the operation of the Administrative Procedure Act, judicial review of an agency's final decision is governed by NRS 233B.130. The district court determined it was not and held a *de novo* trial on the matter.

The State argues that while an unsuccessful bidder may appeal to the Purchasing Director, once that appeal is lodged, the director must hold a hearing within ten days, and this fits within the definition of a contested case as one where rights or privileges of a party are required by law to be determined by an agency. The State further cites the fact that the legislature did not specifically exempt the State Purchasing Department from the ambit of the Nevada Administrative Procedure Act in NRS 233B.039.

George's counters that the language of NRS 333.370 permitting an appeal by an unsuccessful bidder simply states that an unsuccessful bidder *may* file a notice of appeal and the director, after holding a hearing, *may* cancel the award for lack of compliance with the statutory bidding provisions. This, George's argues, does not require the director to determine an unsuccessful bidder's rights, duties or privileges. Further, George's argues that the notice, hearing and decision that the Purchasing Director

issued did not comply with the requirements set forth for the adjudication of a contested case pursuant to NRS 233B.121.

While this is a close question, we conclude that the appeal and hearing afforded an unsuccessful bidder pursuant to NRS 333.370 does not contemplate "a contested case" as defined by NRS 233B.032. In a contested case, each party is given a chance to prepare evidence and subpoena witnesses, if necessary. The requirement that the Purchasing Director conduct a hearing within ten days of its request militates against affording the parties sufficient time to meet the due process requirements set forth in NRS 233B.121. Further, the Purchasing Director obviously did not consider the hearing he conducted a "contested case." The notice, conduct of the hearing and decision did not meet any of the requirements of Nevada law for a contested case.

The statutory scheme of NRS Chapter 333 (State Purchasing) provides a way for an unsuccessful bidder to bring his complaint about the bidding process to the director of the department and let him or her determine if he or she wants to stand by the bid award or rebid the contract. It is designed to be quick and easy. We believe this hearing process to be more akin to a license denial, as we considered in Private Inv. Licensing Bd. v. Atherley, 98 Nev. 514, 654 P.2d 1019 (1982), than a contested matter where the legal rights, duties and privileges of the parties must be determined. We conclude that the district court was correct in determining that the hearing which the Purchasing Director held pursuant to NRS 333.370 was not a contested case and any appeal from such bid affirmation is not governed by NRS 233B.130.

II. *The Bid Specifications.*

The district court determined that the bid specifications and resulting contract to John Deere must be set aside because the specifications were drawn largely from the specifications of the successful bidder's product. We disagree.

The fact that specifications were drawn primarily from one bidder's manufactured product or tended to favor one bidder is not sufficient, in itself, to declare the bid specifications illegal or improper. A public agency should be given some latitude in drawing bid specifications. Bid specifications and the resulting contract will be set aside and declared improper only if the specifications are so arbitrarily drawn in favor of one manufacturer as to bar or present a major impediment to others bidding. Southern Steel Co. v. County of Suffolk, 273 N.Y.S.2d 99

(1966); American Institute for Imp. Steel v. County of Erie, 297 N.Y.S.2d 602 (1968). And even if the specifications eliminate all but one bidder, that bid and resulting contract can be sustained if it is shown that such specifications are necessary in the public interest, as where the product is manufactured by only one company. *See* J.I. Case Co. v. Town Bd. of Town of Vienna, 482 N.Y.S.2d 599 (1984); *Southern Steele Co., supra.*

The State readily admits that it tailored its specifications after the John Deere backhoe it had used in the past. The State was familiar with the reliability and suitability of the John Deere in servicing the needs of State Parks. Moreover, the bid specifications did not preclude others from bidding; in fact, there were five bidders. The district court erred when it determined that the contract to John Deere had to be set aside because the bid specifications were taken primarily from the specifications of the John Deere backhoe.

## III.   *Consideration of post-bid information.*

After the bids were opened but before the final award was made, the State secured additional information from other governmental agencies about the performance and reliability of the equipment with the lowest bid. Our inquiry must then focus on determining whether pursuing and receiving additional information on the performance or reliability of the bid equipment was improper.

The State did not know a great deal about the JCB backhoe. The State is directed by law to accept the lowest responsible bid. Determining which bid is responsible encompasses many factors concerning the bid equipment, such as performance, reliability, and cost. *See* McCallin's Appeal, 1 Monag. 596 (Pa. 1889); Application of Glen Truck Sales & Service, Inc., 224 N.Y.S.2d 199 (1961). To make a determination on the responsibility of a bidder and its equipment, information about the products to be supplied or company rendering a product or service is helpful, and at times essential. The law does not direct that the State, in determining who is a responsible bidder, should base its decision only on information known or garnered before the bids are opened, and common sense directs that it should not.

A public agency that puts a product or service to bid does not know who will submit a bid, let alone which bid will be the lowest. Once the bids are received, the agency may need additional information about the lowest bid or bids to discharge its

responsibility. As long as this inquiry is made in good faith and related to the products or the bid specifications, the public agency should be free to secure additional information.

Other courts have generally agreed that additional information other than that contained in or requested by the specifications or the bids received can be used if it aids a public agency in making an informed decision and has a reasonable relationship to the specifications and bids received. In *Application of Glen Truck Sales & Service, Inc., supra,* public bids were received for five dump trucks. To assist in determining the quality of the dump trucks manufactured by the two bidders and whether compliance with the specifications was met, the commissioner of public works retained an engineer experienced with dump trucks who gave his opinion on a variety of matters. The higher bidder objected to the expert's report on the ground that it was based on documents and material not part of the bid documents and instructions. In rejecting this argument the court held: "The Court holds in relation to the petitioner's objection as to the consideration of documents not a part of the bid that the Board is not estopped from attempting to get full facts, and information before consideration of the bids. . . ." *Id.* at 202.

State Purchasing considered additional information obtained after the bids were opened to inform itself about the performance and reliability of the equipment described in the lowest bid. There is nothing in the record to indicate that this was done in bad faith or for any reason other than to become better informed about the backhoes involved. Under these circumstances, State Purchasing acted properly and within its discretion in rejecting the lowest bid and accepting the bid for the John Deere backhoe.

Courts should be reluctant to interfere with the discretion exercised by a governmental agency in its determination of who is the lowest responsible bidder.

> Courts should not be zealous to interfere with letting contracts, unless they are satisfied that the public has been made to suffer, either through fraud or bad faith or careless attention to business. The presumption is that the acts of executive officers are done for public good. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent that discretion has been abused.

Barnes v. Scranton Poor District, 160 A. 241, 242 (Pa.Super. 1932).

## CONCLUSION

The district court properly held that the bid review hearing permitted by NRS 333.370 was not a contested hearing as defined in the Nevada Administrative Procedure Act and a trial *de novo* challenging the bid award was appropriate. The bid specifications were not so arbitrarily drawn as to preclude George's or other bidders and the district court erred in concluding that the bid documents illegally favored Weaver and its John Deere backhoe. Having determined that the bid specifications were fatally drawn, the district court directed that State Purchasing rebid the backhoe contract. Since we conclude that the bid specifications and the subsequent inquiry concerning the reliability of the lowest bid product were proper, State Purchasing correctly exercised its discretion in selecting the Weaver bid to supply the John Deere backhoe.

Accordingly, the district court decision is reversed, the injunctions entered against State Purchasing are dissolved, and the writ of mandate directing State Purchasing to rebid the backhoe contract is cancelled. State Purchasing's acceptance of Weaver's bid is confirmed.

YOUNG, C. J., STEFFEN, SPRINGER and MOWBRAY, JJ., concur.