**BUD MAHAS CONSTRUCTION, INC., Plaintiff,**

v.

**CLARK COUNTY SCHOOL DISTRICT, et al., Defendants.**

**No. CV–S–91–389–PMP (LRL).**

United States District Court, D. Nevada.

July 2, 1991.

H. Roger McPike, Paul A. Acker, Beckley, Singleton, De Lanoy, Jemison & List, Chtd., Las Vegas, Nev., for Bud Mahas Const., Inc.

Donald H. Haight, Clark County School Dist., Las Vegas, Nev., for School Dist.

Johnnie B. Rawlinson, Chief Deputy Dist. Atty., Las Vegas, Nev., for Bd. of Trustees.

Bill Curran, Stanley W. Parry, Offices of K. Michael Leavitt, Las Vegas, Nev., for Sletten.

### ORDER

PRO, District Judge.

## I. FACTS

Earlier this year, the Clark County School District solicited bids for the construction of the Thurman White Junior High School. When the bids were opened on April 23, 1991, Plaintiff Bud Mahas Construction ("Mahas") was shown to be the low bidder on the project with a total bid of $11,511,000. Sletten Construction of Nevada ("Sletten") submitted a bid of $11,644,000, which is $133,000 higher than Mahas' bid.

Mahas and Sletten both sought qualification under the Nevada Bid Preference Statute, Nev.Rev.Stat. § 338.147.[1] That statute gives a 5% bid preference to a responsible bidder who has paid "the state and local taxes" in Nevada for 5 consecutive years before submitting the bid. The School District staff sought further documentation from Mahas as to its asserted qualification under the Nevada Bid Preference Statute. On May 10, 1991, counsel for the District notified Mahas that it intended to award the contract to Sletten, and invited Mahas representatives to attend the May 14, 1991 meeting of the District's Board of Trustees.

Prior to the meeting, the District staff prepared a memo to members of the Board of Trustees regarding the award of the contract. This memo notes both that the staff did not believe Mahas qualified for the bid preference under Section 338.147

and that the bid was considered nonresponsive because there were irregularities on Mahas' listing of who would be doing which work on the project. At the May 14 meeting, Mahas and its counsel attended and tried to convince the Trustees that Mahas qualified for the bid preference. After lengthy discussion as to this issue, the nonresponsiveness issue was raised and briefly discussed. The problem noted was that Mahas had listed itself as doing certain earthwork and drainage work which its Class B General Contractor's license did not authorize it to do. Following this discussion, the Board of Trustees followed its counsel's advice and awarded the contract to Sletten.

On May 24, 1991, Mahas filed a Complaint for Declaratory Relief and Injunctive Relief (# 1) against Clark County School District, Clark County School District Board of Trustees (both collectively the "District"), and Sletten Construction of Nevada. The Complaint seeks a declaration that the contract should have been awarded to Mahas, and an injunction to prevent Sletten from going forward with construction and to award the contract to Mahas. On May 29, 1991, Mahas filed an Amended Motion for Preliminary Injunction (# 8). The District filed an Opposition (# 16) on June 14, 1991, as did Sletten (# 17). Mahas filed a Reply (# 27) on June 21, 1991. On June 27, 1991, the Court conducted a hearing to consider arguments in support of and in opposition to Mahas' Amended Motion for Preliminary Injunction.

Mahas argues that the taxes it has paid over the last 5 years qualify it for the bid preference under the statute. Further, it argues that its license authorized it to do the on-site portion of the listed work, and that the off-site portion constituted only a "minuscule" portion of the work. Mahas claims that it had hired a qualified subcon-

---

1. Section 338.147 provides in pertinent part:
   2. [F]or the purposes of this section, a contractor who has:
   (a) Been found to be a responsible contractor by the public body; and
   (b) Paid the state and local taxes within this state for 5 successive years before submitting the bid, shall be deemed to have submitted a

better bid than a competing contractor who has not paid the taxes if the amount *of his* bid is not more than 5 percent higher than the amount bid by the competing contractor and the bid does not exceed the amount budgeted for the work or the engineer's estimate of the cost of the work, whichever is less.

tractor to do this portion, and the District staff would have been so informed if they had asked. Mahas asserts that this issue should have been thoroughly discussed with its representatives before the award of the bid, just as the District did request further information as to the bid preference. Finally, Mahas argues that Sletten should not qualify for the bid preference because it was not incorporated or licensed until less than 5 years ago. However, Sletten responds that its parent company has done business in Nevada since 1963, and that the current corporation is a successor thereof, entitled to benefit from the prior activity of its parent.

## II. PRELIMINARY INJUNCTION

■ In *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200–01 (9th Cir.1980), the Ninth Circuit stated the standard for granting a preliminary injunction as follows:

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).... In this circuit the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.... These are not separate tests, but the outer reaches "of a single continuum."

(Citations omitted). In order to prevail ultimately on the merits, Mahas must persuade this Court that 1) the Board's decision that Mahas' bid was unresponsive should be reversed, and 2) that either Mahas does qualify for the bid preference or Sletten does not so qualify. Because this Court finds no likelihood of success on the merits as to the responsiveness issue, the Court must deny the preliminary injunction and need not address the preference issues.

Several Nevada statutes provide the School Board with a great deal of discretion in awarding contracts. Nev.Rev.Stat. § 332.065 provides:

> When a governing body or its authorized representative has advertised for or requested bids in letting a contract, the award shall be made to the lowest responsive and responsible bidder. The lowest responsive and responsible bidder will be judged on the basis of price, conformance to specifications, bidders' qualifications including such bidders' past performance in such matters, quality and utility of services, supplies, materials or equipment offered and their adaptability to the required purpose and in the best interest of the public, each of such factors being considered.

Further, § 332.075 provides:

> Any or all bids received in response to a request for bids may be rejected by the governing body or its authorized representative if such governing body or its authorized representative determines that any such bidder is not responsive or responsible or that the quality of the services, supplies, materials, equipment or labor offered does not conform to requirements or if the public interest would be served by such a rejection.

In statutes relating more specifically to licensing requirements, the statutes provide stricter standards. For example, Section 332.085 provides:

> In determining the responsibility of any bidder, the governing body or its authorized representative *shall* consider the possession of *and limit on* any required license and may consider the financial responsibility, experience, adequacy of equipment and ability of the bidder to complete performance.

(Emphasis added). Finally, Section 338.145 provides in part:

> 1. A public body awarding a contract for a public work *shall not award the contract* to any person who, at the time of the bid, is not licensed under the provisions of chapter 624 of NRS *or if the contract would exceed the limit of his license.*

(Emphasis added).

■ In circumstances where public boards and officials have discretion to de-

termine the lowest responsible bidder, a reviewing Court must look only at the evidence that was before that body in making its decision, and the Court's inquiry is limited to an examination of "whether, upon such information, that body acted arbitrarily, capriciously, and abused its discretion." *Urban Renewal Agency v. Iacometti*, 79 Nev. 113, 118, 379 P.2d 466, 468 (1963); *see also State Purchasing Div. v. George's Equip.*, 105 Nev. 798, 805, 783 P.2d 949, 954 (1989); *Douglas County Bd. of County Comm'rs v. Pederson*, 78 Nev. 106, 108, 369 P.2d 669, 671 (1962); *see generally* 64 Am.Jur.2d *Public Works and Contracts* § 68, at 925 (1972). Thus, this Court may not reverse the decision of the School Board merely because it would have decided differently.

▆ Mahas correctly points out that minor variations from the specifications are not a basis to reject the bid, and that variations are only substantial if they give a bidder a substantial advantage or benefit not enjoyed by other bidders. *Farmer Constr. v. State of Washington*, 98 Wash.2d 600, 656 P.2d 1086, 1088 (1983); *Taylor v. County Bd. of Arlington County*, 189 Va. 472, 53 S.E.2d 34, 41 (1949); *Coller v. City of Saint Paul*, 223 Minn. 376, 26 N.W.2d 835 (1947). However, Mahas did not merely have a variation from the specifications in the request for bids. Rather, the face of its bid package indicated that it intended to do some work for which it was not properly licensed. Though it might have been a very small portion, the statutes above regarding licensing requirements are of a mandatory nature, and "[s]tatutory or regulatory mandatory requirements with respect to bidding on public contracts cannot be waived." 64 Am.Jur.2d *Public Works and Contracts* § 62, at 916 (1972).

▆ Mahas now claims that it had hired a properly licensed subcontractor to do the portion of the work for which it was not qualified. However, the Board was not informed of this fact, and it therefore may not be considered by this Court. Finally, Mahas argues that the nonresponsiveness issue was "badly handled" because the con-

cern of the School Board staff regarding this issue was not raised with Mahas prior to awarding the contract so that it could be resolved. Mahas goes on to say, "Given the advice received by it from the District staff, the Board's action is understandable, but on the facts as they are now known, clearly in error, a situation this Court can rectify." Mahas Reply (# 27), at 18. Mahas, however, has misapprehended the role of this Court in reviewing the Board's decision. As noted above, this Court may only reverse for fraud or abuse of discretion, not merely because the nonresponsiveness issue was badly handled or we now can see the concern was unfounded. A review of the briefs filed as well as exhibits, which include correspondence and the minutes of the Board meeting, indicate that Mahas cannot make the requisite showing of arbitrary action, and there is thus little likelihood of success on the merits. Regardless of whether Mahas or Sletten qualify under the bid preference statute, Mahas cannot prevail unless it can succeed in getting a reversal as to the nonresponsiveness issue. Thus, the preliminary injunction will be denied.

IT IS THEREFORE ORDERED that Mahas' Amended Motion for Preliminary Injunction (# 8) is denied.