THE MAYOR AND ALDERMEN OF JERSEY CITY, PLAINTIFFS IN ERROR, v. THE TOWN OF HARRISON ET AL., DEFENDANTS IN ERROR.

MARTIN V. MATTHEWS, PLAINTIFF IN ERROR, v. THE TOWN OF HARRISON ET AL., DEFENDANTS IN ERROR.

Argued March 10, 1905—Decided November 20, 1905.

1. A contract between two municipalities for a supply of water for public and private use is within the provisions of the statute of frauds.

2. A resolution of the town council of Harrison directed the president and clerk to execute a contract with Jersey City for a supply of water on certain terms. Jersey City, learning of the resolution, caused to be drawn and executed by its officials, and tendered to the town council of Harrison, a paper which was claimed to accord with the terms of the resolution. *Held*, that no contract was thus created (*a*) because the paper thus executed and tendered to Harrison did not conform to the terms of the resolution; and (*b*) because the resolution, never having been communicated by Harrison to Jersey City, did not constitute a proposal which Jersey City might accept and thereby bind Harrison.

On error to the Supreme Court. For opinion of that court, see 42 *Vroom* 69.

For the plaintiffs in error, *George L. Record* and *Robert Carey*.

For the defendants in error, *Collins & Corbin* and *Richard V. Lindabury*.

The opinion of the court was delivered by

MAGIE, CHANCELLOR. Four writs of error have brought to this court for review four judgments of the Supreme Court. Two of the judgments were entered upon *certioraris* (one allowed upon the prosecution of the mayor and aldermen of Jersey City and the other allowed upon the prosecution of Martin V. Matthews), which brought into review in that court a resolution of the town council of the town of Harrison, adopted September 15th, 1903, and rescinding a resolution of that body adopted July 7th, 1903. The other two judgments were entered upon *certioraris* (one allowed upon the prosecution of the mayor and aldermen of Jersey City and the other allowed upon the prosecution of Martin V. Matthews) to review a resolution adopted by the town council of Harrison, on September 15th, 1903, for a contract between the town of Harrison and the New Jersey Suburban Water Company for a water-supply, and the contract executed thereunder. The writs of *certiorari* in the two cases

first named were dismissed by the Supreme Court, and in the other two cases the resolution for a contract and the contract itself were adjudged to be valid and legal, and were affirmed.

All these cases have been argued together and present but a single question, which is raised by the contention of plaintiffs in error that the resolution of the town council of the town of Harrison, adopted July 7th, 1903, and the acts of Jersey City thereon, disclosed by the affidavits, constituted a contract between the town of Harrison and Jersey City, and that in consequence thereof the town of Harrison possessed no power to pass the rescinding resolution of September 15th, 1903, and its action in the passage of that resolution should have been adjudged null and void. This also involves the contention that if the resolution of rescission is void the resolution of the town council, passed at the same meeting, for the execution of a contract with the New Jersey Suburban Water Company, and the contract executed in pursuance thereof, were *ultra vires,* and should have been avoided and set aside for that reason.

The resolution of July 7th, 1903, is in the following words:

"*Resolved,* That the president of the common council and the town clerk of the said town be and they are hereby authorized to execute on behalf of the said town, and in common with the municipal authorities of Jersey City, for a new water-supply for the said town, to be furnished by the said Jersey City on the same terms and conditions and for a similar period of time as are contained in a certain contract made on the 31st day of July, 1885, between the mayor and aldermen of Jersey City and the said town of Harrison, with the following exceptions:

"*First.* That the price for the water to be supplied under the contract hereby authorized shall be at the rate of the sum of $84 per million gallons per day for that quantity of water shown to be consumed on the date of contract, and at the rate of $83 per million gallons when such consumption shall have increased to an average of five hundred thousand gallons daily above that consumption indicated on the

day of the date of contract, and at the rate of $78 per million gallons when the consumption shall have indicated a daily average increase of a second additional five hundred thousand gallons, and at the rate of $75 per million gallons for all water consumed in excess of three (3) million gallons daily."

From the return to the writs of *certiorari* which called for the resolution of July 7th, 1903, it appears that it was adopted by a unanimous vote of the members of the town council of Harrison. But there is nothing in the return to show that the town council directed that the resolution should be transmitted to Jersey City, or gave anyone authority to present the resolution to Jersey City for its action thereon.

It is, however, made to appear by the affidavits that the authorities of Jersey City did, in some way not explained, procure a certified copy of the resolution, and thereupon caused to be prepared and executed by such of its officials as might bind the city a paper purporting and claimed to be such a contract as was called for by the resolution. The paper thus executed was afterward presented to the town council of Harrison, and a demand was made on behalf of Jersey City that it should be executed by the officials of the town of Harrison who were named in the resolution. It had not been so executed when the rescinding resolution was adopted.

The claim on the part of Jersey City is that when the paper, drawn, as claimed, in accordance with the terms of the resolution and executed so as to bind Jersey City, was tendered to the town of Harrison, then, although it was not executed by the officials named in the resolution, or by anyone on the part of that town, a contract thereby came into existence, obligatory upon the town, which it could not avoid by repealing or rescinding the resolution giving authority to execute it.

Upon its examination of the alleged contract the Supreme Court reached the conclusion that such a contract between two municipalities for the sale and purchase of water, involving such amounts, was one within the provisions of the

statute of frauds, and to be binding must be in writing and signed by the party to be charged, or his agent lawfully authorized. With the view thus expressed we are in entire accord, and it has not been made matter of contest in the argument before us. The insistment is that such a contract in writing is disclosed. The appeal is to the well-settled doctrine, illustrated by a long line of cases, which holds that a written proposition for a contract on specified terms and a written acceptance on those terms, constitute a contract in writing within the statute. The contention is that the resolution was a proposition for a contract, and that the paper executed by Jersey City and tendered for execution to the town of Harrison made up a complete contract in writing.

The contention we find to be ineffective. The argument ignores two facts. The resolution of the legislative board of the town is not signed by the town, and this resolution contemplated a contract to be made and executed by certain persons expressly authorized to sign for the town. *Donnelly* v. *Currie Hardware Co.,* 37 *Vroom* 388. In the next place, the proposition had not been communicated by Harrison to Jersey City. A proposition for a contract, to be competent to be accepted, must be communicated to the party with whom the contract is proposed. It will not be sufficient that the latter acquire knowledge of it unless the knowledge is acquired with the express or implied intention of the proposing party. An owner of land, contemplating a sale thereof, might direct his stenographer or other agent to draft a contract for sale to a particular person on specified terms. If the owner has not communicated, or intended to communicate, the proposed contract to that person, the latter having acquired knowledge thereof, could not, by acceptance, bring the owner into a contractual relation of sale. The owner might leave his uncommunicated draft in his agent's hands without liability and retract his agency and abandon his plan at any time. Until communication, there is no efficacious proposal which could be accepted. *Potter* v. *Hollister,* 18 *Stew. Eq.* 508; *S. C.,* 1 *Dick. Ch. Rep.* 609. In like

manner the resolution, never having been communicated to Jersey City by any act of the town of Harrison, did not constitute a proposal, and could not be raised to a binding contract by any acceptance.

As it is found that no contract between the two municipalities came into existence upon the resolution of July 7th, 1903, it, of course, follows that Jersey City had no interest which required the town of Harrison to give any notice of its intent to rescind that resolution.

If it should be admitted that the execution by Jersey City of the paper presented by its officials to the town of Harrison, with a demand that the town of Harrison should execute the same, could operate to create an actual contract, obviously it can only be given that effect if the paper so executed and tendered conformed to the terms of the resolution of July 7th, 1903. That resolution expressly called for a *new* water-supply. It appears by the affidavits that by the former and expired contract water had been for many years supplied to the town of Harrison from the reservoir and water works of Jersey City. The supply thus furnished had become polluted to such a degree that Jersey City had sought for a purer supply, which was being furnished temporarily by other parties, and out of that the supply to Harrison had lately been furnished by Jersey City. As the resolution called for a new supply, it is obvious that its demand could only be met by the tender of a contract for a supply that could be thus characterized. But the paper executed by the Jersey City officials and offered to Harrison simply required Jersey City to furnish water "from the reservoir and water works" of the city. It is obvious that under those terms the city could have resorted to pumping water from the Passaic river into its reservoir, as it had formerly done, and so distributing it to the town of Harrison. In my judgment, the town of Harrison was entitled to a specific contract for water from a new source, and the tender of a contract which did not include the required terms was unavailing.

Nothing, therefore, is found to justify us in declaring that

the town of Harrison was unable to rescind its resolution of July 7th, 1903. The resolution of September 15th, 1903, to that effect, was therefore properly upheld by the Supreme Court, and its judgment thereon must be affirmed.

It necessarily follows that the town council of Harrison, after the passage of the rescinding resolution, had power to proceed to make a contract for a supply of water from any person or corporation having water to furnish and having power to contract with the town.

The contention that the action of the town in determining to contract for water to be supplied by the New Jersey Suburban Water Company was invalid because no notice of its intended action was given to Jersey City, and that city was given no opportunity to be heard thereon, cannot be yielded to. As stated, Jersey City had no rights under the resolution of July 7th, 1903. By the contract dated July 31st, 1885, Jersey City had supplied water to the town of Harrison for a period of ten years. After the expiration of that contract it had never been renewed, nor any new contract made. Water had been supplied by Jersey City, which Harrison had received and paid for at the rates fixed in the expired contract. This course of conduct created no obligation unless it raised an implied contract to pay for such water as was in fact received. But Harrison was not bound to continue to receive it for any period of time, and might cease to receive it whenever it deemed the public interest required. Moreover, before the resolution to contract with the New Jersey Suburban Water Company, notice had been given by that company to the town of Harrison that the water which it was receiving belonged, not to Jersey City, but to that company. It has been determined, in other cases now decided, that the property in the water was then in the New Jersey Suburban Water Company. Under those circumstances Jersey City had no interest which required the town of Harrison to give it notice of its intent to contract with the New Jersey Suburban Water Company. The case is not like that considered in *Taylor* v. *Lambertville,* 16 *Stew. Eq.*

107, and the doctrine therein stated, if capable of being supported, is not applicable here.

The resolution of September 15th, 1903, for a contract with the New Jersey Suburban Water Company, and the contract made with that company, were within the power of the town. Whether the contract was a judicious one is not a subject of judicial review. No reason is presented which justifies us in declaring that the contract was lacking in validity.

The judgment of the Supreme Court in affirming it will therefore be affirmed.

Dixon, J. (dissenting). I do not think that the resolution passed by the council of the town of Harrison on July 7th, 1903, and the action of Jersey City thereon, constituted a contract for the furnishing of a water-supply, but I do think they constituted a proposal on the part of the town and an acceptance on the part of the city which, *prima facie,* would entitle each as against the other to insist on the execution of such a contract.

Assuming that such a proposal and acceptance are within the statute of frauds, I think they were both duly signed.

That the contract tendered by Jersey City was duly signed is admitted.

The resolution of the council unconditionally called for action by Jersey City, and thus by necessary implication authorized the clerk of the council to communicate its terms to the city in the usual manner. This he did by sending to the city authorities a certified copy of the resolution, signed by himself as clerk of the council. The propriety of his doing so was not questioned by the council, when in response to the resolution the city tendered the contract executed by it. Such signature fulfilled the requirements of the statute.

Stress is here laid on the word "new" to support the position that the acceptance by the city did not correspond with the proposal by the town. The evidence shows that Jersey City was then receiving what was known and characterized as "a new water-supply" for the use of its own citizens, and

the town, under the contract of July 31st, 1885, and therefore under the terms of the resolution of July 7th, 1903, was to be furnished with water out of the same supply. To this effect was the acceptance by the city.

I therefore conclude that by force of the proposal and acceptance Jersey City acquired rights of which the council could not legally deprive it, except upon the ascertainment of some extrinsic ground for denying the justness of its claim.

When a municipal body is confronted with such a situation, then, according to numerous decisions in this state (*Traction Company* v. *Board of Works, 27 Vroom* 431; affirmed on error, 28 *Id* 710; *Connolly* v. *Freeholders, Id.* 286; *Stanley* v. *Passaic,* 31 *Id.* 392; *Dodd* v. *State Board of Health,* 38 *Id.* 463; *Jersey City, &c., Railway Co.* v. *Passaic,* 39 *Id.* 110), the body must assume a *quasi*-judicial character and give due notice to the parties interested before proceeding to deal with their rights. If it fails to do so, its proceedings will be set aside on *certiorari.*

Consequently the resolution of the council passed September 15th, 1903, to rescind the resolution of July 7th, 1903, without notice to Jersey City, should be set aside.

Until the rights of Jersey City were legally ended it was unreasonable for the council to attempt to bind the town as proposed by the resolution of September 15th, 1903, providing for a contract with the New Jersey Suburban Water Company for another supply of water, and therefore that resolution should also be set aside.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN. 8.

*For reversal*—DIXON, GRAY. 2.