IN THE MATTER OF THE APPEAL OF THE TOWN OF
WEST NEW YORK FROM THE ACTION OF THE DIVI-
SION OF TAX APPEALS, DEPARTMENT OF THE
TREASURY RE THE ASSESSMENT ON PROPERTY OF
HACKENSACK WATER CO. SITUATE IN THE TOWN OF
WEST NEW YORK, COUNTY OF HUDSON, FOR THE
YEARS 1952, 1953, 1954, AND 1955.

Argued September 30 and October 7, 1957—Decided
December 9, 1957.

*Mr. Anthony J. Armore* argued the cause for the appellant, The Town of West New York (*Mr. Samuel L. Hirschberg,* attorney).

Mr. *Joseph Keane* argued the cause for the respondent, Hackensack Water Company (*Messrs. Milton, McNulty & Augelli,* attorneys; *Mr. Samuel Wm. Zerman,* of counsel).

The opinion of the court was delivered by

BURLING, J. This is an appeal from an order of the Division of Tax Appeals affirming a determination of the Hudson County Board of Taxation cancelling an amount of $200,000 imposed each year from 1952 to 1955, inclusive, as an *ad valorem* personal property tax assessment by the appellant, The Town of West New York, against respondent, Hackensack Water Company. Prior to hearing and while the cause was pending in the Appellate Division, we certified it to this court on our own motion.

The Hackensack Water Company supplies water to the inhabitants of 55 municipalities in northern New Jersey. One of the municipalities supplied by its system is the Town of West New York. Over the years the Water Company has paid a personal property tax to West New York for its water mains, service connections, meters, hydrants and other tangible personal property located within the confines of the municipality. In the years 1952 through 1955 that property was assessed at $403,000. In addition, beginning in 1952 and during each of the successive years 1953, 1954 and 1955 West New York assessed "the average amount of water located and sold by the Hackensack Water Company in the taxing district of West New York" at a value of $200,000. The $200,000 valuation for the water flowing through the mains of West New York was arrived at by computing the annual billings to the consumers located in West New York for the year 1952, which sum amounted to approximately $260,000. While it is not entirely clear from the record, apparently certain service charges made for sprinkler systems and fire hydrants were then deducted from this amount, thus establishing an approximate figure of $200,000 as the value of the water in the mains. The same figure applied to the years 1953, 1954 and 1955.

Each year the Hudson County Board of Taxation set aside the personal property assessment for the water and West New York appealed from each determination. The four appeals were heard together by the Division of Tax Appeals in 1956. After a hearing, the Division found "that a water company which is permitted to divert water from its natural source under public franchise and thereafter treats and distributes such diverted waters does not carry with it the incidence of title or ownership similar to those understood to exist where personal property is assessed and taxed under New Jersey Personal Property Assessment Statute *R. S.* 54:4–1." It further found that the contention of the Water Company "that the Water Company does not sell water, but supplies water and makes a service charge for supplying such water in proportion with the amount of water used is reasonable." Accordingly, a judgment was entered for each of the years 1952 to 1955 affirming the cancellation of the $200,000 assessment of Hudson County Board of Taxation.

The fundamental question involved is whether the water in question is an intended subject for taxation under the basic statute, *R. S.* 54:4–1 which provides:

"All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter at its true value, and shall be valued by the assessors of the respective taxing districts. An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purpose of this act, a mortgage of said land for the unpaid balance or purchase price. Personal property taxable under this chapter shall include, however, only tangible goods and chattels and shall not include any intangible personal property whatsoever whether or not such personalty is evidenced by a tangible or intangible chose in action, except as otherwise required by sections 54:4–20, 54:4–21 and 54:4–22 hereof. Property omitted from any assessment may be assessed by the county board of taxation within such time and in such manner as shall be provided by law. All property shall be assessed to the owner thereof with reference to the amount owned on October first in each year, and the person so assessed for personal property shall be personally liable for the taxes thereon."

The question is apparently a novel one. The parties have not cited, nor have we been able to discover a case in point in this jurisdiction or elsewhere, where it was held that water in the mains of the distributing system of a water company was subject to a local *ad valorem* personal property tax.

Before proceeding to a consideration of the contentions advanced by the parties on this appeal and to our ultimate resolution of the controversy it might be well to observe at the outset a pertinent canon of legislative interpretation:

"The literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible be read so as to conform to the spirit of the act. 'While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words.' " 2 *Sutherland, Statutory Construction* (3d ed. 1943), § 4706.

The Town of West New York views the Water Company as a vendor of water, much the same as a merchant of any other commodity. The Hackensack Water Company is a public utility operating under the Water Act of 1876, *R. S.* 48:19–1 to 48:19–25, inclusive. See *Hackensack Water Co. v. Ruta*, 3 *N. J.* 139, 144 (1949). By its terms that statute confers upon the Water Company three major powers: it may divert such water from springs and streams "as shall be necessary and proper to enable the company to carry into effect the purposes of its incorporation" (*R. S.* 48:19–13); it may condemn privately owned streams and springs (*R. S.* 48:19–15), and it may "sell and dispose of the water issuing from its reservoirs, acqueducts or pipes for such prices, or quarterly or annual rents and such restrictions as they may think proper." (*R. S.* 49:19–18). West New York contends that the powers of diversion, condemnation and sale manifest a legislative recognition that once water is, pursuant to the statute, removed from its natural source and purified and made ready for use it is the personal property of the Water

Company. They also contend that judicial recognition was given to the fact that water in the mains of a water company is a commodity offered for sale, and hence personal property, in New Jersey, citing *Suburban Water Co. v. Town of Harrison,* 72 *N. J. L.* 194 (*E. & A.* 1905), where the court permitted a suit to recover the price of water supplied to a municipality. As a further authority they cite 1 *Farnham on Water Courses, p.* 893 (1904), wherein the author states:

"Water conducted in the pipes of a waterworks system for supplying the inhabitants of a city with water is personal property, and not appurtenant to any land within the meaning of statutes relating to taxation."

The Water Company argues that the State owns the water as trustee for the people, and that it merely has "the right to use the water to supply the public, but has no title or ownership to it." The water in question is drawn from the Hackensack River at Oradel. The Water Company contends that riparian owners of streams and rivers have no right to divert water therefrom for general public sale and consumption without the consent of the State, and that beyond usufructuary uses of the riparian owners the State owns the residuum of the water remaining in the river or stream as trustee for the people, citing *McCarter, Att'y. Gen. v. Hudson County Water Co.,* 70 *N. J. Eq.* 695 (*E. & A.* 1906), affirmed *sub nom. Hudson County Water Co. v. McCarter,* 209 *U. S.* 349, 28 *S. Ct.* 529, 52 *L. Ed.* 828 (1907); *Wilson, Att'y. Gen. v. East Jersey Water Co.,* 78 *N. J. Eq.* 329, 334 (*Ch.* 1911); *Paterson v. East Jersey Water Company,* 74 *N. J. Eq.* 49, 82–83 (*Ch.* 1908), affirmed 77 *N. J. Eq.* 588 (*E. & A.* 1910).

The Water Company also argues that the statutory law supports its position that it simply supplies water, but does not own it. Under *R. S.* 58:2–1 the Water Company pays a license fee to divert water from the river. Significance is attached to the fact that the fee charged is denominated as a license fee and not a price, as would be the case if a sale

was intended. Moreover, under *R. S.* 58:3–1 water companies are expressly prohibited from diverting the waters of this State into "any other state for use therein."

In our view, the instant controversy should not rest upon theoretical notions of ownership of personal property. Such jural concepts may be employed where they are useful, but where, as here, they tend to become artificial they should properly be discarded as analytical devices. As Justice Cardozo aptly advanced: "Analysis is useless if it destroys what it is intended to explain." Cardozo, *The Nature of the Judicial Process, page 127* (1921).

In this instance the indicators of legislative design are to be found in the realities of the situation. For instance, the difficulties inherent in establishing a value for the water in the mains of the Water Company by the standard set forth in the personal property tax statutes is relevant in the quest for legislative intent. The standard alluded to under *R. S.* 54:4–1 is "true value" assessed on the basis of the amount "owned on October first in each year." For purposes of establishing an assessment figure the appellant has resorted to *R. S.* 54:4–11 which provides:

"Personal property consisting of stock in trade and materials used in manufacture in this state, which shall include raw materials, fuel, goods in process of manufacture and completed products, shall be estimated at the average of such personalty located in the taxing district during the year preceding the date as of which the assessment is made, or the average for such portion of the year that the property may be in the possession of the person assessed."

The reason why an "average" was enacted in *R. S.* 54:4–11 was to prevent an undue depletion of stock in trade prior to the date fixed for assessment in fraud of taxes. See *Bobbink & Atkins v. Clifton,* 20 *N. J. Misc.* 149 (*St. Bd. Tax App.* 1942). Aside from the variation of daily average in *R. S.* 54:4–11, its effect is the same as *R. S.* 54:4–1. According to the cases in this jurisdiction the assessment is computed by taking the month-end inventories of the taxpayer, where available, and dividing by the number of such inventories. See *General Motors Corp. v. State Board*

of *Tax Appeals,* 125 *N. J. L.* 574, 576–577 (*E. & A.* 1940) ; *Jersey City v. Maritime Petroleum Corp.,* 25 *N. J. Misc.* 81, 86 (*Div. Tax App.* 1946), reversed on other grounds 1 *N. J.* 287 (1949). Calculated by the amount of billings, the average daily assessment value for the water in the pipes is $700. Even that minimal figure is inaccurate because it assumes that the price of the billings to consumers bears a logical relation to the value of the water in the mains. In this instance no such logical relationship exists. The charges made to consumers by the Water Company, while based upon the amount of water used, does not include the value of the water. They are based upon the cost of operation, plus a reasonable return on the depreciated value of the pipes and property used in rendering the service. It is significant that at the hearing a witness called by the Water Company and identified as being a member of the New Jersey Utilities Association and American Water Works Association stated that in his 41 years of experience he knew of no way to value water as it flows through the mains of the company. Perhaps an attempted valuation under the formula established in *R. S.* 54:4–11 would be the daily average of water consumed calculated on the basis of some theoretical price which consumers would pay to go to the reservoir site and cart water away rather than pay the service charge to have it delivered to their faucets. The difficulties of assessment alluded to sufficiently indicate that water in the mains of a water company was not contemplated in the legislative design within the meaning of the term "personal property" as used in *R. S.* 54:4–1.

■■ Interrelated to the question of valuation is the fact that by its own accounts the Water Company supplies a service; it does not carry the value of the water as an asset on its books. Its charges to consumers do not include the value of the purified water. These charges are regulated and approved by the Public Utilities Commission. In the absence of an express inclusion in the statute, we are reluctant to impute a legislative design to tax as personal property, under *R. S.* 54:4–1, water in the mains of the Water Com-

pany, when by common understanding neither the Water Company nor the Public Utilities Commission have considered such water as an asset of the Water Company. Moreover, the Division of Tax Appeals concluded factually that the Water Company supplies a service rather than sells water. As we observed in *Aetna Life Insurance Co. v. City of Newark*, 10 *N. J.* 99, at *page* 104 (1952):

> "The duty of the appellate court under these rules in this class of cases is to review the evidence and render such decision as it seems proper in the light of that evidence but not to disturb the judgment of the Division of Tax Appeals unless the evidence is persuasive that the administrative tribunal erred."

See also *Atlantic City Transportation Co. v. Director, Div. of Taxation*, 12 *N. J.* 130, 141 (1953); *Fifth St. Pier Corp. v. City of Hoboken*, 22 *N. J.* 326, 337 (1956).

Another aid to statutory construction fortifies the conclusion that the Legislature did not intend that water be taxable under *R. S.* 54:4–1. Water has flowed through the mains of water companies in municipalities within this State for a considerable period of time and yet this is the first effort, to our knowledge, by municipal officials to impose a local *ad valorem* personal property tax upon such water. While recognizing the ingenuity of the municipal officials of the appellant, we cannot assume that this source of revenue has heretofore been overlooked by other municipal tax officials. Rather, their long continued inaction is indicative of a lack of statutory power to impose a personal property tax upon such water. The Supreme Court of the United States in *Federal Trade Commission v. Bunte Bros.*, 312 *U. S.* 349, at *page* 352, 61 *S. Ct.* 580, 582, 85 *L. Ed.* 881 (1941), expressed the view that inaction by administration officials bespeaks a lack of statutory power in the following language:

> "Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise. But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who

presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."

See also *Hennessy v. Personal Finance Corp., 176 Misc. 201, 26 N. Y. S. 2d* 1012 *(Sup. Ct.* 1941) ; 2 *Sutherland, Statutory Construction,* § 5106. The language of *Hennessy v. Personal Finance Corp., supra,* is equally apposite here:

"A practical construction given a statute by the public generally, as indicated by a uniform course of conduct over a considerable period of time, and acquiesced in and approved by a public official charged with the duty of enforcing the act, is entitled to great weight in the interpretation which should be given it, in case there is any ambiguity in its meaning serious enough to raise a reasonable doubt in any fair mind." 26 *N. Y. S. 2d,* at *pages* 1017–1018.

For the reasons set forth herein we conclude that the Legislature did not intend that water in the mains of a water company should be taxable under *R. S.* 54:4–1 and that the determination below should be affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and FRANCIS—6.

*For reversal*—None.