151 N.J. Super. 218 (1977)
376 A.2d 960
K.S.B. TECHNICAL SALES CORP. AND LINDA FAZIO, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS,
v.
NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND BRISCOE/COURTER/CONDUIT, A JOINT VENTURE, INTERVENOR-RESPONDENT, AND TERMINAL CONSTRUCTION CORPORATION AND STATE OF NEW JERSEY, INTERVENORS-CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1977.
Decided June 30, 1977.
*221 Before Judges LORA, CRANE and MICHELS.
Mr. Julius B. Poppinga argued the cause for appellants and cross-respondents K.S.B. Technical Sales Corp. and Linda Fazio (Messrs. McCarter & English, attorneys; Mr. John R. Drosdick and Mr. Geoffrey McC. Johnson on the brief).
Mr. Harold R. Teltser argued the cause for respondent cross-appellant North Jersey District Water Supply Commission of the State of New Jersey (Messrs. Teltser and Perle, attorneys; Mr. Michael R. Perle on the brief).
Mr. Herbert R. Ezor argued the cause for cross-appellant Terminal Construction Corporation (Messrs. Heller & Laiks, attorneys; Mr. Murray A. Laiks of counsel).
Mr. Michael S. Bokar, Deputy Attorney General, argued the cause for cross-appellant State of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey; Mr. Stephen L. Skillman, Assistant Attorney General, of counsel).
*222 No brief was submitted on behalf of Briscoe/Courter/Conduit, a joint venture.
The opinion of the court was delivered by MICHELS, J.A.D.
This appeal is taken from a judgment of the Chancery Division which, in part, declared that a New Jersey "Buy American" statute, to wit N.J.S.A. 52:33-2, as incorporated in the addendum of the specifications relating to Contract W-76, Wanaque Filtration Plant, conflicts with the General Agreement on Tariffs and Trade (GATT) and the Supremacy Clause of The United States Constitution and is unconstitutional,[1] but, nevertheless, held that the bids submitted in accordance with such specifications were binding, and ordered that they be received and opened by defendant North Jersey District Water Supply Commission (Commission). The factual and procedural background and the issues raised in the Chancery Division are recounted in the opinion of that court and need not be repeated in detail here. See 150 N.J. Super. 533.
Briefly, plaintiffs, K.S.B. Technical Sales Corp., a wholly-owned subsidiary of a West German manufacturer of pumps and pumping equipment, and Linda Fazio, also known as Sieglinde Fazio, a taxpayer and resident of the City of Clifton, instituted this action seeking a declaration that New Jersey's "Buy American" statutes, N.J.S.A. 40A:11-18, N.J.S.A. 52:32-1, and N.J.S.A. 52:33-2, are unconstitutional and against public policy, and an order striking the following "Special Requirement" from Addendum No. 1 to the Specifications for the Wanaque Filtration Plant (Contract W-76):

Use of American Manufactured Products:
Only manufactured products of the United States, wherever available, shall be used in the work in accordance with municipalities and counties Local Public Contracts Law N.J. 40A:11-18. *223 Plaintiffs also sought to enjoin the Commission from receiving and opening the bids submitted in accordance with this Special Requirement.
The trial judge held that the New Jersey "Buy American" statutes do not conflict with the Commerce Clause of the United States Constitution and therefore are not facially unconstitutional. However, the court held that N.J.S.A. 52:33-2, as incorporated in the addendum to the specifications, conflicts with the General Agreement on Tariffs and Trade (GATT) and the Supremacy Clause and is unconstitutional. Notwithstanding this declaration rendering the specifications for the work unlawful and void, the court, as a result of "balancing the equities" in the case, ordered the Commission to receive and open the bids submitted in accordance with the specification, and held that these bids were binding upon the Commission. Plaintiffs appealed, and the Commission and the intervening defendants Terminal Construction Corporation (Terminal) and the State of New Jersey (State) cross-appealed. We accelerated the appeal pursuant to R. 2:9-2.
Plaintiffs contend on appeal that the trial judge erred in not holding the "Buy American" statutes unconstitutional on their face under the Commerce Clause of the United States Constitution. We disagree. We are convinced that the judge correctly determined that the three New Jersey Buy American statutes, to wit: N.J.S.A. 40A:11-18, N.J.S.A. 52:32-1 and N.J.S.A. 52:33-2, do not conflict with the Commerce Clause and therefore are not facially unconstitutional. Moreover, we are in accord with his determination that (1) the Commission is a public body, and that the work to be performed in constructing the Wanaque filtration plant is a public work within the meaning of N.J.S.A. 52:33-1, and therefore plant construction contracts are governed by the provisions of N.J.S.A. 52:33-2, and (2) in the context of this case the applicable "Buy American" statute incorporated in the addendum to the specifications requiring that "Only manufactured products of the United *224 States, wherever available, shall be used in the work" conflicts with GATT and the Supremacy Clause of the United States Constitution and is therefore unconstitutional. Accordingly, we affirm those portions of the judgment of the Chancery Division essentially for the reasons expressed by Judge Ciolino in his written opinion. See 150 N.J. Super. at 533. However, we deem it appropriate to add the following reasons for affirming the declaration of unconstitutionality of the applicable "Buy American" statute under the Supremacy Clause.
Part II, Art. III, par. 2 of the 1947 General Agreement on Tariffs and Trade provides that products imported into the territory of a signatory country from another "shall be accorded treatment no less favorable than that accorded to like products of national origin in respect to all laws, regulations and requirements affecting their internal sale, offering for sale, purchase, transportation, distribution, or use." An exception dealing with the use of imported materials by government agencies appears in par. 5 of the same Article. It provides:
The provisions of this Article shall not apply to the procurement by governmental agencies of products purchased for governmental purposes and not for resale or use in the production of goods for sale....
Plaintiffs and Terminal contend that a conflict exists between these provisions and N.J.S.A. 52:33-2, and that consequently the New Jersey statute is invalidated by operation of the Supremacy Clause, U.S. Const. Art. VI, cl. 2. The State, on the other hand, contends that (1) the provisions of GATT are inapplicable since the challenged pumps are not used in the "production" of "goods" for sale, and (2) if GATT applies, it does not preempt state regulatory power in this circumstance.

Applicability of GATT
It is clear that governmental units engaged in the purification and sale of water are considered to be in *225 private business, operating in a proprietary and not a governmental capacity.[2] As stated in Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229 (1952):
* * * there is general agreement that the distribution of water by a municipality to its inhabitants for domestic and commercial uses is a private or proprietary function which in its exercise is subject to the rules applicable to private corporations. This is the rule in New Jersey. Lehigh Valley R.R. Co. v. Jersey City, 103 N.J.L. 574 (Sup. Ct. 1927), affirmed 104 N.J.L. 437 (E. & A. 1928); Fay v. Trenton, 126 N.J.L. 52, 18 A.2d 66 (E. & A. 1941). See, also, Olesiewicz v. City of Camden, 100 N.J.L. 336 (E. & A. 1924). [at 233-234]
See also, Crownhill Homes, Inc. v. City of San Antonio, 433 S.W.2d 448, 480-484 (Tex. Civ. App. 1968), err. ref. n.r.e. (Sharpe J., dissenting, discussing New Jersey cases); Annotation "Liability for Furnishing Impure Water," 54 A.L.R. 3d 936, § 3 at 940-941. To be sure, the proprietary nature of an undertaking to provide water is not absolute. Water supply systems constitute public utilities subject now to a considerable measure of governmental regulation in the areas of rate-fixing, purity standards and the like. Moreover, because of the essential nature of water, a duty to provide it and provide it equitably has been imposed. However, the fact of governmental control over some aspects of operations does not lessen the eventual commercial impact of the enterprise. Thus, in Jersey City Mayor, etc. v. Harrison, 71 N.J.L. 69 (Sup. Ct. 1904), aff'd 72 N.J.L. 185 (E. & A. 1905), where the enforceability of a contract for the sale of water was at issue, the court stated:
The alleged contract with Jersey City for a water-supply in the case sub judice is a contract for the sale of goods, wares and merchandise *226 as fully as if the water was to be delivered in bottles * * *. [71 N.J.L. at 70]
Similarly, in Canavan v. Mechanicville, 229 N.Y. 473, 128 N.E. 882, 13 A.L.R. 1123 (1920), the New York Court of Appeals held that the furnishing of water was a sale of goods under the Uniform Sales Act,[3] stating:
The furnishing of water, through a system of waterworks, by a water corporation, either private or municipal, to private consumers, at a fixed compensation, is a sale of goods within the meaning of the statute. That the furnishing is without profit to the corporation is weightless. The corporation segregates the water supplied from its sources in reservoirs or pipes of its own and delivers it to those who demand and receive it at a fixed compensation or price. It is a sale of goods as fully as if the water were collected and delivered in bottles for a price. Mayor, etc., of Jersey City v. Town of Harrison (Sup. Ct.). 71 N.J.L. 69, 58 A. 100, affirmed (E. & A.) 72 N.J.L. 185, 62 A. 765, 65 A. 507; Oakes Mfg. Co. v. City of New York, 206 N.Y. 221, 228, 99 N.E. 540, 42 L.R.A. (N.S.) 286, [128 N.E. at 883]
Accordingly, we hold to the view that the pumping units to be furnished and installed at the Wanaque filtration plant pursuant to Contract W-76 will be utilized in the production of goods for resale, and therefore the contract is not exempt from the operation of the 1947 General Agreement on Tariffs and Trade.

Unconstitutionality of the Buy American Statute
It has long been established that a treaty, a manifestation of the federal foreign affairs power, stands on the same footing of supremacy as the constitution and federal *227 laws. See United States v. Schooner Peggy, 5 U.S. (1 Cranch.) 103, 2 L.Ed. 49 (1801); Caparell v. Goodbody, 132 N.J. Eq. 559, 565 (Ch. 1942), and cases cited therein. A treaty will be recognized as supreme, even when local conditions seemingly justify a local enactment. As stated in Bacardi Corp. v. Domenech, 311 U.S. 150, 166, 61 S.Ct. 219, 228, 85 L.Ed. 98, 108 (1940), a case involving local trademark regulation:
The exigencies of local trade and manufacture which prompted the enactment of the statute cannot save it, as the United States in exercising its treaty making power dominates local policy.
In United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134 (1937), where the anti-confiscatory policy of New York State was set up as an obstacle to federal action, the court stated:
Plainly, the external powers of the United States are to be exercised without regard to state laws or policies. The supremacy of a treaty in this respect has been recognized from the beginning. Mr. Madison, in the Virginia Convention, said that if a treaty does not supersede existing state laws, as far as they contravene its operation, the treaty would be ineffective. "To counteract it by the supremacy of the state laws, would bring on the Union the just charge of national perfidy, and involve us in war." 3 Elliot's Debates 515. And see Ware v. Hylton, 3 Dall. 199, 236, 237, 1 L.Ed. 568, 584, 585. And while this rule in respect of treaties is established by the express language of cl. 2, Art. VI, of the Constitution, the same rule would result in the case of all international compacts and agreements from the very fact that complete power over international affairs is in the national government and is not and cannot be subject to any curtailment or interference on the part of the several states. Compare United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 316, et seq., ante, 255, 57 S.Ct. 216, 219, 81 L.Ed. 255. In respect of all international negotiations and compacts, and in respect of our foreign relations generally, state lines disappear. As to such purposes the State of New York does not exist. Within the field of its powers, whatever the United States rightfully undertakes, it necessarily has warrant to consummate. And when judicial authority is invoked in aid of such consummation, state constitutions, state laws, and state policies are irrelevant to the inquiry and decision. It is inconceivable that any of them can be interposed as an obstacle to the effective operation of a federal *228 constitutional power. Cf. Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641, 11 A.L.R. 984; Asakura v. Seattle, 265 U.S. 332, 341, 44 S.Ct. 515, 516, 68 L.Ed. 1041, 1044. [301 U.S. at 331-332, 57 S.Ct. at 761]
See also, United States v. Pink, 315 U.S. 203, 233, 62 S.Ct. 552, 86 L.Ed. 796, 819-820 (1942); Hines v. Davidowitz, 312 U.S. 52, 62-63, 61 S.Ct. 399, 85 L.Ed. 581, 584-585 (1941); United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 315-318, 57 S.Ct. 216, 81 L.Ed. 255, 260-261 (1936).
The New Jersey "Buy American" statute incorporated in the specifications for the materials to be furnished and installed in connection with the Wanaque project required the bidders to use only products of the United States, whenever available, thereby excluding products of other signatories to the 1947 GATT treaty. This statutory requirement imposed an unlawful burden on products of foreign countries, which violates the 1947 GATT agreement and is clearly unconstitutional under the Supremacy Clause of the United States Constitution. The declaration that N.J.S.A. 52:33-2 is unconstitutional in this context accords with the decision of the California District Court of Appeal in Bethlehem Steel Corp. v. Board of Comm'rs of Dept. of W. & P., 276 Cal. App.2d 221, 80 Cal. Rptr. 800, 803-806 (1969), which held the California "Buy American" act to be "an unconstitutional intrusion into an exclusive federal domain." Id. 80 Cal. Rptr. at 806. See also, Baldwin-Lima-Hamilton Corp. v. Superior Court, 208 Cal. App.2d 803, 25 Cal. Rptr. 798, 809-810 (D. Ct. App. 1962). Cf. American Institute for Imported Steel, Inc. v. Erie Cty., 58 Misc.2d 1059, 297 N.Y.S.2d 602 (Sup. Ct. 1968), rev'd in part 32 App. Div.2d 231, 302 N.Y.S.2d 61 (App. Div. 1969).

Invalidity of Original Bids
By invalidating the "Buy American" addendum to the Wanaque bidding specifications, the trial judge recognized *229 a positive prohibition against such a specification of constitutional dimension. The specification clearly constituted a major condition of the proposal. Under settled New Jersey law, waiver of the prohibition is not possible. The circumstances under which a condition of a bidding proposal might be waived were discussed in Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403 (1975), where Justice Mountain, in pertinent part, stated:
* * * there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. [at 412]
Justice Mountain noted that such requirements must be distinguished from conditions
* * * whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons. * * * [Emphasis supplied]
The latter category of conditions, he found, "are the kind * * * which may not under any circumstances be waived." Id. See also, Hillside Tp. v. Sternin, 25 N.J. 317, 325-326 (1957); Case v. Trenton, 76 N.J.L. 696, 700 (E. & A. 1909). Compare River Vale Tp. v. R.J. Longo Constr. Co., 127 N.J. Super. 207 (Law Div. 1974); Young v. West Orange Redev. Agency, 125 N.J. Super. 440 (App. Div. 1973).
The policy of permitting no deviation from accepted bidding standards is firmly established in New Jersey. As observed by Justice Pashman in L. Pucillo & Sons, Inc. v. New Milford Mayor and Council, 73 N.J. 349, 356 (1977), in the context of local public contracts:
The long-standing judicial policy in construing cases governed by the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. and *230 its predecessors, has been to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines. See, e.g., Hillside Tp. v. Sternin, supra, 25 N.J. at 325-26; A.C. Schultes & Sons v. Haddon Tp., 8 N.J. 103, 108 (1951); Waszen v. City of Atlantic City, supra, 1 N.J. 272 at 283 (1949); J. Turco Paving Con., Inc. v. City Council of Orange, 89 N.J. Super. 93, 103 (App. Div. 1965); Belousofsky v. Board of Education of City of Linden, 54 N.J. Super. 219, 223 (App. Div. 1957); Case v. Trenton, 76 N.J.L. 696, 700 (E. & A. 1909); Armitage v. Newark, 86 N.J.L. 5, 10 (Sup. Ct. 1914). Bearing in mind the purposes of the act  "to guard against favoritism, improvidence, extravagance and corruption" and "to secure for the public the benefits of unfettered competition," Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 410 (1975)  our courts have adopted this approach largely as a prophylactic measure. As Justice Francis observed in Hillside Tp. v. Sternin, supra:
In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way. [25 N.J. at 326.]
As the Court stated in Terminal Const. Corp., supra:
Bidding statutes are for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition. To achieve these purposes all bidding practices which are capable of being used to further corrupt ends or which are likely to affect adversely the bidding process are prohibited, and all awards made or contracts entered into where any such practice may have played a part, will be set aside. This is so even though it is evident that in fact there was no corruption or any actual adverse effect upon the bidding process. [67 N.J. at 409-410]
A similar conclusion was reached in Baldwin-Lima-Hamilton Corp. v. Superior Ct., supra.
Moreover, it is fundamental that when positive constitutional prohibitions exist, a court of equity is not free to disregard them. Thus, in Hedges v. Dixon Cty., 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044 (1893), the Supreme Court held that when a municipality issued bonds in excess of its constitutional authority, a court of equity lacked the power to declare valid the portion of the bond *231 issue that did not exceed constitutional bonding limits. In reaching this result, the Supreme Court commented:
Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and where the transaction, or the contract, is declared void because not in compliance with express statutory or constitutional provision, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof. [150 U.S. at 192, 14 S.Ct. at 74]
In view of the clear mandate of the foregoing cases, we hold that the bids submitted April 13, 1977 in compliance with the "Buy American" addendum to the specifications for the Wanaque Filtration Plant (Contract W-76) are unlawful, void and of no effect. We are also of the view that the procedure followed by the Commission in seeking alternate bids "based on the use of products regardless of whether or not manufactured in the United States" contravened the letter and spirit of the applicable public bidding statute. Accordingly, we also declare that the six bids received by the Commission on April 22, 1977 in response to a solicitation by mailgram are void and of no effect. Therefore we direct that all bids be returned unopened by the Conservator to the bidders submitting them and direct that the Commission readvertise for proposals for said contract in accordance with the provisions of N.J.S.A. 58:5-20. Those portions of the judgment of the Chancery Division declaring the bids submitted in compliance with the "Buy American" addendum to be binding and ordering the Commission to receive and open them are reversed. Except as so modified, the judgment of the Chancery Division is affirmed.
NOTES
[1] As pointed out by the trial judge, the addendum incorrectly referred to N.J.S.A. 40A:11-18.
[2] An exception to this rule obtains when the water is used to promote the health and safety of the population as a whole, such as when used in fire hydrants. See, e.g. Canavan v. Mechanicville, 229 N.Y. 473, 128 N.E. 882, 13 A.L.R. 1123 (Ct. App. 1920).
[3] Under the Uniform Sales Act, goods were defined in part as "all chattels personal other than things in action and money." Water was held to be personal property in Coast Laundry, Inc. v. Lincoln City, 9 Or. App. 521, 497 P.2d 1224, 54 A.L.R.3d 930 (App. Ct. 1972). See also, Horton v. Inhabitants of North Attleboro, 302 Mass. 137, 19 N.E.2d 15 (Sup. Jud. Ct. 1939). Contra, see In re West New York, 25 N.J. 377 (1957).