SOUTH JERSEY PORT CORPORATION, PLAINTIFF, v.
MODERN HANDLING EQUIPMENT CO.,
DEFENDANT.

Superior Court of New Jersey
Law Division Camden County

Decided March 4, 1988.

*William E. Cox* for plaintiff (*Brandt, Haughey, Penberthy, Lewis & Hyland*).

*Stacey J. Gould* for defendant (*Weiner & Weiner*).

GREENE, J.S.C.

On February 19, 1988 the court heard argument on the motion and cross-motion for summary judgment in this matter concerning whether the Local Public Contracts Law (L.P.C.L.), *N.J.S.A.* 40A:11–1 *et seq.*, is binding upon plaintiff, South Jersey Port Corporation (SJPC) *N.J.S.A.* 12:11A–1 *et seq.* The action had been instituted by plaintiff SJPC in accordance with the terms of a stipulation entered into and arising out of the dismissal of a case between the parties in the United States District Court at Camden. The Attorney General has declined to appear.

The SJPC was created by an act of the Legislature, *N.J.S.A.* 12:11A–1, *et seq.*, in 1968 and, in addition to assuming the responsibilities of the former South Jersey Port Commission (Camden Marine Terminals), the Legislature determined: to place responsibility for Delaware River port development in Southern New Jersey (Mercer, Burlington, Camden, Gloucester, Salem, Cumberland and Cape May Counties); that the SJPC was the "sole agency" for the development of said port, and the Legislature provided the SJPC with certain statutory powers to effect the port development, some of which are to acquire and hold personal property, to make and enter into all contracts necessary for the performance of its duties; and further provided that all other general laws inconsistent with that statutory enactment were declared to be inapplicable.

The SJPC was initially established in the State Department of Environmental Protection as a body corporate and politic and now reposes in the Department of Commerce and Economic Development. *N.J.S.A.* 52:27H–13. Such is pursuant to the constitutional command. *N.J. Const.* (1947), Art. V, § IV, par. 1.

Though the legislation states that the exercise of the powers granted will be in all respects for the benefit of the people of the State, the port facilities are presently primarily, if not only, located within the City and County of Camden.

The SJPC consists of seven members, drawn from the counties in question, and requires appointment by the Governor with the advice and consent of the Senate, and the chairman and vice-chairman are so designated by the Governor. The Governor is expressly given control to nullify any action taken by the SJPC, as evidenced in the minutes submitted to the Governor.

Within its financial structure, the statute mandates the establishment of a SJPC reserve fund and a SJPC tax reserve fund.

The SJPC reserve fund contains monies appropriated therefor by the State, if any, proceeds of bonds, and other monies of the SJPC. The monies in this fund are applied solely to the payment of interest or principal of bonds of the SJPC. The law provides that in order to assure the maintenance of the maximum debt special reserve in the SJPC reserve fund that the State will transfer to the fund such amount annually as may be necessary, if at all, to restore said fund to the maximum debt service reserve. *N.J.S.A.* 12:11A–13, –14.

The SJPC tax reserve fund holds funds, one source of which is State funds, which are to be used for the payment, in lieu of taxes, to the municipalities in which the SJPC's tax-exempt property is located. *N.J.S.A.* 12:11A–20. The exercise of the powers of the corporation constitute the proceeds of essential governmental functions in all respects for the benefit of the people of the State of New Jersey, and the purpose of the tax

reserve fund is to prevent suffering by counties and municipalities in which the tax-exempt property is located.

The SJPC functions are not at all functions common to local municipal entities, as counties or lesser municipal corporations, such as cities, townships, *etc.* The operation of Delaware River marine terminals has local, national and international aspects, in conjunction with, or in competition against, either private terminal operators or other port corporations on the Delaware or along the East Coast and, of course, as close as the Philadelphia Port Corporation.

With the foregoing as background, this matter emerges from the objection of defendant Modern Handling Equipment Co. (Modern), a Pennsylvania corporation, to the award by SJPC of a contract for the purchase of two forklift trucks by the SJPC at an informal price quotation in excess of the bid submitted by Modern. Modern claims that the award of the forklift contract violates the provisions of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1, and plaintiff claims that the Local Public Contracts Law is not applicable to it.

The Local Public Contracts Law, *L.*1971, *c.* 198, entitled "An Act concerning local public contracts by municipalities and counties and revising parts of the statutory law," was partly new and partly "sourced" upon county and municipal statutory contract bidding law, itself repealed by the L.P.C.L. Under certain circumstances, the law requires public advertisement and bidding relative to public works, materials and supplies.

### Rules of Statutory Construction.

As our case law indicates, statutes are to be "read sensibly" and the final inquiry is the "true intention of the law." *Suter v. San Angelo,* 81 *N.J.* 150 (1979); *Alexander v. N.J. Power & Light,* 21 *N.J.* 373 (1956).

As a general rule of statutory construction the Court should first look to the general language of the disputed statute. If the Court finds that the statute is clear and unambiguous on its face and admits of only one interpretation; the sole function of the Court is to enforce the statute according to its literal terms.

Furthermore, the words and phrases contained in the statute should be given their ordinary and well understood meaning. [*State v. Pleva*, 203 *N.J.Super.* 178, 187–188 (App.Div.1985); citations omitted]

## *Local Public Contracts Law, N.J.S.A. 40A:11–1 et seq.*

The question is whether the SJPC falls within the definition of a "contracting unit" as that expression is defined in the Local Public Contracts Law at *N.J.S.A.* 40A:11–2. As previously noted, the chapter was stated to be "An Act concerning local public contracts by municipalities and counties and revising parts of the statutory law." The statute has application to "contracting units" meaning:

(a) any county; or

(b) any municipality; or

(c) any board, commission, committee, authority or agency, which is not a State board, commission, committee, authority or agency, and which has administrative jurisdiction over any district other than a school district, project or facility, and included or operating in whole or in part within the territorial boundaries of any county or municipality which exercises functions which are appropriate for the exercise by one or more units of local government, and which has statutory power to make, purchase or enter into contracts or agreements for the performance of any work or the furnishing or hiring of any materials or supplies usually required, the cost or contract price of which is to be paid with or out of public funds. [*N.J.S.A.* 40A:11–2]

## *"Excepted Out" State Instrumentalities.*

Understanding the origins of the L.P.C.L., *i.e.*, chapter 25 of the *Revised Statutes* (Counties) and portions of *Title* 40 (Municipalities) which are now repealed, see *Kingston v. N.J. Turnpike*, 80 *N.J.Super.* 25, 34 (App.Div.1963), and reading in neither the SJPC legislation, *N.J.S.A.* 12:11A–1 *et seq.*, nor the L.P.C.L. any specific reference to SJPC contract-bidding-advertisement provisions, the SJPC does fit within the clear, exclusionary language of *N.J.S.A.* 40A:11–2(1)(c):

... which is not a State board, commission, committee, authority or agency....

## I.

The SJPC is a creature of the New Jersey Legislature. It is a body corporate and politic and has perpetual succession.

*N.J.S.A.* 12:11A–6. It is not a creation of local units, such as a borough, township or county, *e.g.,* township housing authority or county MUA. It is not answerable to any county or municipality.

By the legislative will, it is the "sole agency," *N.J.S.A.* 12:11A–1, for the development of the port within its jurisdictional seven-county district and its principal is the State of New Jersey. Not only does it rest under the aegis of the Department of Commerce and Economic Development, *N.J.S.A.* 52:27H–13, but its members are appointed by the Governor and confirmed by the Senate, *N.J.S.A.* 12:11A–5. Its chairman and assistant chairman are designated by the Governor, and the Governor, by veto, controls all actions of the SJPC reflected in its minutes.

Such an entity is a "State agency" within the plain language of *N.J.S.A.* 40A:11–2. The act only concerns municipalities and counties as it says on its face. *L.*1971, *c.* 198.

The language of the SJPC act, as to its nature, is so clear, *vis-a-vis* "State agency" in the L.P.C.L. as to be beyond dispute.

II.

The only case that has addressed the applicability of the L.P.C.L. to a body of the nature as SJPC is *K.S.B. Tech Sales v. No. Jersey Water Supply,* 150 *N.J.Super.* 533 (Ch.Div.1977), mod. 151 *N.J.Super.* 218 (App.Div.1977), rev'd 75 *N.J.* 272 (1977).

Defendant water commission was a public agency organized under *N.J.S.A.* 58:5–1 *et seq.* and operated a water system for several municipalities situate in several counties in the northern part of New Jersey. The commission entertained bids for the construction of a filtration plant and specified that, under the "Buy American" provisions of the L.P.C.L., American products be used in the bid and construction. In "effect," K.S.B. was a West German manufacturer of pumps and pumping equipment. Hoping to supply its products to potential contract bidders,

K.S.B. sought a declaration, *inter alia*, that the "Buy American" portion of the L.P.C.L. was unconstitutional. K.S.B. claimed that there was no authority for the commission to rely on the L.P.C.L. because the commission was a nonlocal body and that the statute referred only to counties and municipalities. At the same time, K.S.B. recognized the existence of another "Buy American" statute in *Title* 52. When the Supreme Court made the final determination, *i.e.*, that "Buy American" was valid in *Title* 52 and applicable to K.S.B., the Court said, in finding the commission's use of the L.P.C.L. to be "erroneous":

> Both the Trial Court and the Appellate Division held the applicable statute was *N.J.S.A.* 52:33–2 and –3, *not N.J.S.A.* 40A:11–18. *We agree.* [75 *N.J.* at 278, 381 *A.*2d 774; citations omitted]

Understanding that there was "standing by" another "Buy American" statute for application, the Supreme Court was, nevertheless agreeing, that the L.P.C.L. was not applicable to the water commission. Its "inapplicability" logically is related to the "except out" language of the L.P.C.L.:

> ... which is not a State board, commission, committee, authority or agency ... [N.J.S.A. 40A:11–2(1)(c)]

and the "county/municipal" history of the L.P.C.L.

The water commission and the SJPC are quite similar in nature:

(a) both are created by specific act of the State Legislature;

(b) the commission covers a great part, but not all, of the State, including several counties;

(c) the Governor appoints the commissioners, with the advice and consent of the Senate;

(d) both are bodies corporate, with standard powers.

Refusing to view the applicability of the L.P.C.L. in a piecemeal fashion, *i.e.*, maybe "Buy American" is not applicable but other portions are, that case law does support the conclusion that the SJPC, by definition, is exempt from the L.P.C.L. The Legislature has expressly "excepted-out" the SJPC as a State agency not subject to the Local Public Contracts Law.

### Attributes of a Public Body Considered a "Contracting Unit."

If a public body were not to fall within the "excepted out" proviso of *N.J.S.A.* 40A:11–2(1)(c), the statute describes some of the attributes of a public body as:

[a] ... has administrative jurisdiction over any district ... project or facility, included or operating in whole or in part, within the territorial boundaries of any county or municipality ...

[b] ... exercises functions which are appropriate for the exercise by one or more units of local government ...

[and]

[c] The cost or contract price [of purchases, work, materials, supplies] is to be paid with or out of public funds.

Not falling within the "except out," the scrutiny of the attributes of such a body would be predicated upon legislative intent, the words chosen and the positive favoritism towards public contract law requiring bidding and advertisement.

### (a) *Territorial Area.*

The only meaningful construction of these words stated above is:

i—the expression "included or operating" has reference to the "district," "project" or "facility" included or operating; and

ii—the expression "in whole or in part" refers to the *entire* "district," "project" or "facility" within more than one municipality within the same county.

Independent of the L.P.C.L. question, some municipalities do have joint statutorily authorized undertakings, *e.g.,* the Merchantville–Pennsauken Water Commission operating in Camden County.

To read the expression "in whole or in part" to refer to a part of the "district," "project" or "facility" not only wholly within one county, but also partly in one county and partly in another county, obviates the need for the language entirely. Under defendant's interpretation, *all* such districts, projects or facilities would be encompassed within the language because either wholly within one county or within more than one county. If

all are to be so encompassed, what purpose is served by the language relating to administrative jurisdiction and territorial scope?

It is a cardinal rule of statutory construction that full effect should be given, if possible to every word of a statute. We cannot assume the Legislature used meaningless language. [*Gabin v. Skyline Cabana Club*, 54 *N.J.* 550, 555 (1969)]

The continuing legislative intention in L.P.C.L. was to apply the law to counties and municipalities, and there is no evidence of an intention to expand the territorial areas greater than single counties.

The SJPC lacks the characteristic of geography called for in this provision of the L.P.C.L.

### (b) *Local Governmental Functions.*

Public bodies (not "excepted out") subject to the Local Public Contracts Law are those, other than a county or municipality, which exercise "functions which are appropriate for the exercise of one or more units of local government. . . ." *N.J.S.A.* 40A:11-2(1)(c). The functions of the SJPC as set out by the Legislature are far from functions appropriate for the exercise of one or more units of local government. It is obvious that the Legislature has expressly determined that too many cooks in the kitchen are bad for the port. Therefore, the Legislature conferred solely upon the SJPC the jurisdiction for the development of the port and expressly sought to avoid confusion and contrary competitiveness by local units by proscribing, in effect, "overlapping jurisdiction and responsibility." *N.J.S.A.* 12:11A-1. It removed from local units, such as municipalities and counties, port development as an "appropriate function" in this area of the Delaware.

### (c) *Use of Public Funds.*

The remaining attribute of public bodies subject to the L.P.C. L. is that the costs or prices for work, materials, supplies, *etc.*, is to be paid from "public funds."

The SJPC act found that it should be vested with powers and responsibilities sufficient to fulfill not only its port development purposes but its financial obligations to the government and people of New Jersey, *N.J.S.A.* 12:11A–1; to operate marine terminals and enter into lease agreements with terminal operators and to fix the rents, fees and charges therefor, *N.J.S.A.* 12:11A–6, –19, and to issue bonds or notes and to pay for same, *N.J.S.A.* 12:11A–11, –12. The legislation expressly provides that the bonds or notes are not a debt or liability of the State. Thus, it can be seen that the SJPC is financially independent of "public funds," being essentially a revenue producing operation, with revenue generated from assorted leases, tolls, rents and charges.

Defendant suggests that frequent contributions from the State in the 1970's and three annual reserve fund contributions to SJPC since 1978 to date bring SJPC thereby into the attribute "with or out of public funds."

The new corporation SJPC was obligated to establish two funds: the South Jersey Port Corporation reserve fund, *N.J. S.A.* 12:11A–13, and the South Jersey Port Corporation tax reserve fund, *N.J.S.A.* 12:11A–20.

### South Jersey Port Corporation Reserve Fund.

This fund, created as a security device for the payment of interest on, and principal of, Port Corporation bonds, receives its funds from either the State, bond proceeds or SJPC deposits. In this fund, a maximum debt service reserve amount must be maintained. To assure this level of funds in this reserve, the State may contribute to the fund and, in the last ten years, has done so three times; in the 1970's six times.

Understanding that the statute specifically provides that the bonds or notes of the SJPC are not debts or liabilities of the State, *N.J.S.A.* 12:11A–16, that the State's contributions, if and when made, are only to assure the maintenance of the reserve fund and are not used to pay for SJPC purchases, work,

materials or supplies, it is unreasonable to expect that the Legislature intended this attribute, related to L.P.C.L. application, to be related to an "if, as and when basis," whenever the level of the reserve fund dictates a State contribution. The reverse side of the coin is, of course, that, with no reserve fund contribution for a particular year, the SJPC would thereafter be "free" of the L.P.C.L. unless and until a later State appropriation was triggered.

In a 1963 case where a bidder sought, by analogy, to apply State and local contract bidding law to the turnpike, Judge Goldmann examined a State statute (*N.J.S.A.* 52:34–6) dealing "with or out of State funds ..." *Kingston Bituminous v. N.J. Turnpike Auth.*, 80 *N.J.Super.* 25, 32 (App.Div.1963). The examination also extended to the nature of the New Jersey Turnpike Authority as disclosed in its enabling legislation plus a review of *In the Matter of Plumbing, etc. Ass'n, Inc. v. N.Y. State Thruway Authority*, 5 *N.Y.*2d 420, 185 *N.Y.S.*2d 534, 158 *N.E.*2d 238 (Ct.App.1959). Judge Goldmann's analysis of that decision and the financial attributes of the thruway was related to this concept of "board" of New York State and the use of "public funds." Judge Goldmann associated the independence of the thruway with that of the turnpike; the court was not dissuaded from using the *Thruway* case even though the New York statute provided a state "guarantee" of $500,000,000 of thruway bonds while noting no such guarantee existed for the turnpike.

### South Jersey Port Corporation Tax Reserve Fund.

This fund has its origins in the State's declaration that since the SJPC operates for the benefit of the entire State, *N.J.S.A.* 12:11A–20, the corporation should pay no taxes upon any marine terminal and that the same be exempt. So that counties and municipalities do not suffer from the loss of local taxes, the law permits the SJPC and a particular municipal unit to agree on the tax loss and SJPC to pay for same. The tax reserve fund receives monies from the State, SJPC bond proceeds and

other monies of the SJPC pursuant to those "tax agreements" (*N.J.S.A.* 12:11A–20). This fund therefor appears to be in the nature of a pass through of State funds, to local, county or municipal units, lifting the burden of SJPC's tax-exempt status —"taxes," in effect, paid for by the beneficiary of the SJPC's services, the people of New Jersey.

This *tax reserve fund* is merely a device to funnel to taxing districts compensation for taxes lost by them due to the SJPC tax-exempt status.

Such use of State funds clearly does not fall within the language of "with or out of public funds."

### Conclusion.

The L.P.C.L. is not applicable to the SJPC. If the Legislature deems the force of such kind of law be imposed upon the SJPC, it is certainly free to do so via supplementation to *N.J.S.A.* 12:11A–1 *et seq.* See *N.J.S.A.* 27:23–6.1 (N.J. Turnpike Authority), *N.J.S.A.* 27:12B–5.2 (Garden State Parkway), *N.J.S.A.* 27:12C–11.1 (Atlantic City Expressway).